## ELISHA MAXEY v. THOMAS O'CONNOR.

A grant of land is not void, because the amount granted exceeds that to which the grantee was entitled; it is not subject to be annulled, except by the government itself, and then only for actual fraud in the person procuring it. Legal and technical fraud, is not sufficient.

Where the grantee was entitled to receive a grant from the government of a certain amount of land, (as, for instance, premium lands due to an empresario,) and received a grant of a portion thereof, less in amount than that to which he was entitled; his title thereto is not affected by a subsequent grant to complete his complement, although such subsequent grant, with that previously received, in the aggregate, exceed in amount the quantity to which he was justly entitled. That the first grant thus made was valid, is, it seems, a sufficient answer to an objection, by a subsequent locator upon it, that the grantee obtained in the aggregate, a greater amount of land than, from the face of his applications, he was entitled to.

Where a party, who has located on one of the tracts granted, which tract does not exceed the amount to which the grantee was entitled, attacks the validity of the grant, on the ground of an alleged fraudulently acquired excess in the entire grant; though in the aggregate the lands granted may amount to more than the premium to which the grantee was entitled, yet, in the absence of proof, it will not be assumed that, on receiving the title in question, the grantee did not surrender the prior or subsequent title which would have rendered the grant excessive.

A grant objectionable for excess, is not void, but only voidable, at most, for the excess, and subject to be reformed. The right to reform it, appertains to the government, and not to a subsequent locator.

The special commissioner, (Vidaurri,) for the colony of Power and Hewitson, had authority to issue titles for premium lands to the empresarios. After the repeated decisions of this court, sustaining similar titles issued by the commissioner of the colony, in accordance with the practice under the colonization laws, his authority to issue such title cannot now be questioned.

It cannot be denied, that Power and Hewitson, as empresarios, were entitled, from the government, to a grant of premium lands. If the grant to them was excessive, and they received title, whether in one tract, by one title of

possession, or in different tracts, by several titles, to more land than they had the right to demand for the number of families introduced by them, it is not perceived, that the case differs in principle, from any other case of an excessive grant.

The decree of the congress of the state of Coahuila and Texas, No. 253, of the 3d of February, 1834, granting eight leagues to each of the empresarios, (Power and Hewitson,) " as an indemnification for the expense, they have incurred in virtue of the contract they entered into in 1828, provided, that at the expiration of the term, they shall not be able to fulfil their engagements," does not appear to have been intended as a substitute for the premium lands to which the empresarios might be entitled for families actually introduced, but as an indemnity for certain expenses incurred, in case they should fail to complete their contract, so as to receive the full quantity of premium lands, they would in that event be entitled to; and certainly was not intended to derogate from or impair any rights they might have, or might acquire, under the law of their contract.

The petition by Power and Hewitson, to the governor, for carrying into effect this decree, on the contingency recited in the petition, on which, by the decree, they were each to receive eight leagues of land, was not a surrender on their part, of any right which they had by reason of a part performance of their contract.

The removal of a grantee of land, from Texas to another of the states of Mexico, before the revolution, who did not return to the republic or state, did not affect his title acquired before the revolution. It was unaffected by change of government.

APPEAL from Refugio. Tried below before the Hon. Edmond J. Davis.

This was an action of trespass to try title, brought by Elisha Maxey, the appellant, on the 12th of November, 1855, against Thomas O'Connor, the appellee.

On the trial, the plaintiff proved the location, and re-locations made by him on the land in controversy, by virtue of a certificate for land, as alleged in his petition; which was in the ordinary form, simply claiming title, alleging trespass, &c., by the defendant.

The defendant read in evidence the colonization contract of Power and Hewitson for the ten coast leagues, between the rivers Guadaloupe and Nueces, a copy of the title to four and one-half leagues of land granted to Power and Hewitson, (which title it was agreed, embraced the land claimed by the plaintiff,) and a

deed of conveyance, dated the first day of May, 1855, to the defendant, from Hewitson, for one league of the said land. The defendant proved possession of the tract under Power, in conflict with the plaintiff's claim, from the year 1848; that Power stated, in 1850, that the defendant was to hold two leagues as his tenant, and was to have one-fourth of a league. There was never any dispute about the land between Power and the defendant.

The plaintiff offered, in rebuttal, to prove the grant of the four leagues and a half, (on part of which he had located,) to have been acquired by fraud, by translated copies of several documents from the General Land Office; he first offered a translation of the grant of the four leagues and a half, already in evidence, in the Spanish language. The evidence showed the petition of Power and Hewitson to the commissioner, describing themselves as empresarios of the new colony, and stating that "the number of one hundred families being completed, we are entitled to premium of five leagues, for each empresario, and consequently we have selected four leagues on the banks of the San Antonio river, represented on the special map, under Nos. 19, 20, 24 and 25, and another half league, adjoining the rancho of citizen Antonio Siedeck." The petition proceeded to pray, that the same might be granted to them as empresarios' premium, on account of the quantity due them. The commissioner ordered the grant to be made as prayed for, on the 12th October, 1834, reciting therein, the fact, that the applicants had introduced into their colony one hundred families of settlers, "and therefore entitled to the premium referred to." On the same day, the commissioner extended the title, and put the applicants in possession of the lands asked for.

The document next offered was the petition of the parties, for the residue of the premium, which they alleged to be five leagues, "not more than one half of this premium having been given us;" which was in like manner granted, on the 26th day of October, 1834.

The plaintiff then offered a title similar in form, granted on

the petition of Power, reciting that Hewitson and himself were empresarios of the colony, and that the colonization laws allowed him a premium, in consideration of his difficulties in carrying on his enterprise, and praying for the grant, on that account, to him, of a league of land, described in the petition. On the 5th day of September, 1834, the commissioner ordered as follows: "The interested party being entitled, as empresario, to the premium pointed out by him, let the subject of his application be adjudged to him, on account of number of leagues that may belong to him." And the possession and title was accordingly given him to the land described.

The plaintiffs also introduced the petition of Power and Hewitson, to the governor, dated November 20th, 1834, which recited that, on the 11th day of June, 1828, they had entered into the contract with the government heretofore referred to, and that by its terms, within a certain period, which had at that date already elapsed, they were to have introduced and settled, on the littoral border, between the creek La Vaca, and the river Nueces, four hundred families, and whereas they had settled there only one hundred and sixty families, and the congress of the state had granted the concession of eight leagues to each of them, as indemnification of the expenses incurred, provided that at the conclusion of the term of the contract, they (petitioners) should not have complied with their obligations, according to the decree of the 3d of February of the current year. The land asked for was, by the applicants, designated; and the order for the concession was made. The land asked for proving not to be vacant land, proceedings were had to obtain other lands, in virtue of the premises stated; a corresponding order was accordingly made, but nothing farther was accomplished; and no title was made or possession given.

The commission of Vidaurri, (who made the grants,) as special commissioner for the "enterprises" of James Power and James Hewitson, dated June 19th, 1834, was offered and read in evidence.

A jury was waived, the cause submitted to the court, and judgment rendered for the defendant.

*J. F. Smith,* for the appellant.

*Cunningham & Holt,* for the appellee.

WHEELER, C. J.—The plaintiff claims the land in controversy, under a certificate located in 1855, and re-located in 1856, and again in 1857. The defendant is in possession, claiming under a grant to the empresarios, Power and Hewitson, of four and a half leagues, as their premium lands, issued by the commissioner of the colony, on the 12th of October, 1834.

The main ground on which the plaintiff asserts the right to appropriate the land, by the location of his certificate upon it as vacant land, is, that the title under which the defendant claims is fraudulent and void.

There is no pretence that there was any misrepresentation of fact made by the grantees, or any imposition practised, or sought to be practised, by them upon the officer, in obtaining the grant. The fraud which will authorize the annulling of a grant in any case, is not legal and technical, but actual and positive fraud in fact, committed by the person who obtained it. (Per Marshall, C. J., 3 Pet. Rep. 341 ; Johnston v. Smith, 21 Texas Rep. 722.) There is no evidence conducing in any degree to support the conclusion, that there was any fraud in fact committed by the grantees in obtaining their grant. The evidence relied on to invalidate the grant is, that in their petition, the grantees stated that the number of one hundred families being completed, they were entitled to a premium of five leagues each ; that one of the grantees had previously received one league as premium land; that subsequently to the issuance of the title here in question, they received a title to other five leagues as premium land ; and that they had obtained a concession from the governor, under Decree No. 253, of the congress of the state, (Laws and Decrees, p. 230, 231,) granting them each eight

leagues as indemnification for their expenses, in case they should fail to complete their contract of colonization ; upon this concession, however, no title appears ever to have issued. There can be no pretence that these facts afford evidence of any imposition, deception, or actual fraud practised upon the officer of the government, in obtaining the grant. The sum and substance of the objections to the title, founded on this evidence, is, that the grantees applied for and obtained more land than, as appears by their own representation, in their petition for the grant, and the facts therein set forth, they were entitled to receive.

It might be a sufficient answer to this objection to the title, that the grant here in question is for a less quantity of land than the grantees were entitled to receive, and is unaffected by the subsequent grant. But if the prior grant of a league to one of these grantees would render this grant excessive to the amount of a fraction of a league, it does not appear that they have ever claimed title under that grant. For aught that appears, it may have been surrendered and vacated, by consent of the grantee and the government. The same may be true in respect to the subsequent grant of five leagues. But such subsequent grant, if excessive and invalid, could not affect the validity of the present title. (Edwards v. James, 7 Texas Rep. 372.) If, by reason of the former grant, the present is excessive, and subject to be reformed, it would not render the grant void, but only voidable at most, for the excess. And if it be conceded, that the appellant has the right to have it reformed in this action, to the extent of such excess, it does not appear that he would be benefited thereby. But the appellant has not the right, at his instance, to have the grant reformed for the excess, if it be excessive. That is a right which appertains to the government, and not to a subsequent locator. (White v. Burnley, 20 Howard, Rep. 247.)

It cannot be denied, that the grantees were entitled to a grant, by the government, of premium lands. The commissioner who issued the title, was bound, officially, to know how many families had been introduced, and the quantity of land to which the

grantees were consequently entitled. After the repeated decisions of this court, sustaining similar titles issued by the commissioner of the colony, in accordance with the practice under the colonization laws, his .authority to issue the title cannot now be questioned. If the grant was excessive, as contended, and the grantees actually received title, whether in one tract, by one title of possession, or in different tracts, by several titles, to more land than they had the right to demand, for the number of families introduced by them, it is not perceived that the case is different, in principle, from any other case of an excessive grant. The excess does not render the grant void, *in toto*, but only voidable, at most, by the government. Thus, in White v. Burnley, 20 How. Rep. 247, in the Supreme Court of the United States, it appeared on the face of the grant, that the quantity of land which the lines of the survey included, was more than two leagues, whereas the grant called for but one league, and the reason the surveyor gave, in his certificate, for the excess, was, that he included in the survey a bay of the ocean, which was not subject to grant, a quantity equal to a league. "This statement," the court said, "was proved to be untrue, almost entirely. The grant contains two leagues, and more, of fast land; and, for this reason, it was insisted, at the trial, that it was fraudulent and void. But the court charged the jury to the contrary, with several qualifications. These we deem to have been useless, as our opinion is, that a regular grant (that is, a completed title, made by those exercising the proper political power to grant lands,) is not open to this objection, by an opposing claimant setting up a younger title; and we understand, that on this principle, the well considered case of Hancock v. McKinney, 7 Texas Rep. 384, and Swift v. Herrera, 9 Texas Rep. 263, proceeded. Such is the settled doctrine elsewhere. (Overton v. Campbell, 5 Hayw. Ten. Rep.)" The court further say, that a case of excess, sufficiently gross, could arise to justify a suit on the part of the state, to reform a Spanish grant, they do not doubt. (Citing United States v. Hughes, 11 How. 552.) "But the question here is not of reform, it is of original nullity." "The surveyor

and commissioner, as the judge of land distribution, had juris-
diction; it was their duty to act justly between the government
and the grantee. The commissioner acted by extending the
title of possession, and thus vested a full title in Morales. No
one at that time had any right to complain, if the government
was content; it has so far acquiesced, and younger grantees are
bound by that acquiescence."

These observations apply, in their full force, to the present
case, upon the supposition that it was shown that the grant was,
in fact, excessive. It was, at most, voidable, not void. The ap-
pellant had no interest to be affected by it at the time; nor does
he appear to have acquired a right to appropriate any part of
the public domain until many years subsequent. If the govern-
ment is content, he can have no right to complain. If his claim
had existed at the time, there was ample scope for its satisfac-
tion, out of land not previously appropriated, or granted. The
grant not being void, the land embraced within it was not vacant,
or subject to location by the plaintiff. This view of the case will
necessarily lead to an affirmance of the judgment.

It is proper further to observe, in reference to the concession,
by the governor of the state, of eight leagues to each of the em-
pressarios, under decree of the congress of the state, (No. 253,)
of the 3d of February, 1834, introduced in evidence by the plain-
tiff, for the purpose of showing that the grantees had surrendered
all claim to premium land, that neither the law, nor the conces-
sion, warrants the inference sought to be drawn from them. The
law grants eight leagues to each of the. empresarios, "as an
indemnification for the expense they have incurred in virtue of
the contract they entered into in 1828; provided, that at the
expiration of the term, they shall not be able to fulfil their en-
gagement." This provision was made some time anterior to the
date of the grant in question, and but a short time before the
expiration of the term limited by the contract for the introduc-
tion of the families contracted for. It does not appear to have
been intended as a substitute for the premium lands to which the
empresarios might be entitled for families actually introduced,

but as an indemnity for the expenses incurred, in case they should fail to complete their contract, so as to receive the full quantity of premium lands, they would, in that event, be entitled to receive. It is, at least, certain, that it was not intended to derogate from, or impair any rights they might have, or might acquire, under the law of the contract. In their petition for the concession, after the expiration of the term limited by the contract, they represent that they have not been able, in consequence of various reverses, which they mention, to fulfil their engagement, not having been able to introduce more than one hundred and sixty families; and that the contingency had happened which the law contemplated, and which entitled them to the benefit of the legislative grant. They had not been able fully to complete their contract; and hence they claimed that they were entitled to the indemnity and bounty, which the government had provided for them. The governor granted the concession, thus showing that he concurred in their construction of the law. There was, in this, no surrender, on their part, of any right which they had, by reason of a part performance of their contract. Even if it was intended as a substitute for their premium lands, they do not appear ever to have received a title to any land, by virtue of this legislative grant, and the governor's concession. They do not appear to have received any benefit from either, or to have taken anything by them. They are, therefore, inoperative, and cannot have the effect to deprive them of their right to premium land, acquired under the law of their contract with the government. They show, indeed, that instead of having received from the government more land than by law they were entitled to claim, they have, in fact, received less. It cannot, with any plausibility, be contended, that because they did not avail themselves of the most favorable alternative presented to them by the government, if it was intended as an alternative, they shall, therefore, be deprived of the less favorable, which they did accept.

The objection, that one of the grantees had removed from Texas to another of the states of Mexico, before the revolution,

and did not return to the republic, or state, is answered by the fact, that his title was acquired before the revolution, and was unaffected by the change of government. (Kilpatrick v. Sisneros, *supra*, 113; Jones v. McMasters, 20 Howard, Rep. 8, 20, 21.)

Other objections to the title, which are answered by repeated decisions of the court, too familiar to require particular reference, need not be noticed. There is no error in the judgment, and it is affirmed.

Judgment affirmed.