JACOB ELLIOT *v.* DAVID R. MITCHELL ET AL.

Exceptions of the defendants, appellees in this court, to the sufficiency of the plaintiff's petition, were overruled in the court below, but they did not appeal nor assign errors. *Held*, that they are not entitled to a revision by this court of the ruling of the court below upon their exceptions.

The boundaries of Burnet's colony, under his contract with Coahuila and

Texas, of the 22d December, 1826, are thus described in the record, and in Paschal's Dig., Art. 248: "Beginning at the town of Nacogdoches; thence on a north course, the distance of fifteen leagues, to a point clear of the twenty boundary leagues parallel with the river Sabine, which river is the boundary or dividing line with the United States of the North, here a land-mark shall be made; and thence on a line run west to Navasoto creek; thence down said creek with its meanderings, by its left bank, to the place where it is crossed by the road leading from Bexar to Nacogdoches; thence with said road to fork of the Bull's Hill (Lomo del Toro) road, before arriving at the military post on the Trinity, with said road to its junction with the old road; and with said old road to the town of Nacogdoches and place of beginning. Leaving at the right, all the lands granted yesterday to citizen John Lucius Woodbury, attorney for Messrs. José Vehlein & Company."

To determine the northern boundary of Burnet's colony, a line should be run directly west, from the termination of the first line, of 15°, in a northern direction from Nacogdoches, and the evidence should be confined to a direct west line from the point of intersection of the line from Nacogdoches with the line of the twenty leagues west from the east boundary of the State.

If the northern line of Burnet's colony, being run directly west, would pass north of Navasoto creek, it must be so varied as to strike the most northern branch of that creek.

The condition of the country, in 1835, requires that a liberal construction be given in favor of grants and locations then made.

If the lines of Burnet's colony had been established, the survey of a colonist, claiming under that colony, must, if valid, have been made within its limits.

But if, as is believed to have been the case, the lines of the colony had never been surveyed, or otherwise established by certain boundaries, the fact that the colonial commissioner and a colonist located the land of the latter a short distance without the limits of the colony, as since ascertained, did not necessarily invalidate the title of the colonist to the land located.

If it can fairly be concluded that the commissioner and the colonist reasonably believed that the land located for the colonist was within the limits of the colony, the title of the colonist is valid, notwithstanding it may since have been ascertained that the land is not comprised within the colonial boundaries.

Where more land was included in a survey than the grant called for, but the excess is not so great as to prove fraud, the grantee will hold to the entire extent of his survey.

An excess of three hundred acres, in a survey made under a grant for a league, does not affect the validity of the title.

The 17th section of the amendatory act of 16th March, 1848, to regulate proceedings in the district court, provides as follows: "No objections to the form of depositions, or to the manner of taking them, in any suit, shall be

heard, unless they are in writing, and notice thereof is given to the opposite counsel, before the trial of the suit commences: *Provided*, Said depositions shall have been filed in the court at least one entire day before the day on which the trial commences." (Paschal's Dig., Art. 3742, Note 849.)

When a witness whose deposition has been taken is present in court at the trial, it is error to allow his deposition to be read as evidence against the . objection of the opposite party.

The 9th section of the act of 28th January, 1860, further regulating proceedings in the district court, reads as follows: "The appellant, or plaintiff in error, shall in all cases file with the clerk of the court below an assignment of errors, distinctly specifying the grounds on which he relies, before he takes the transcript of the record from the clerk's office, and a copy of such assignment of errors shall be attached to and form a part of the record, and all errors not so distinctly specified shall be considered by the supreme court as waived." (Paschal's Dig., Art. 1591, Note 618.)

It has been held by this court, that errors of a controlling character, that go to the foundation of the action or defense, may be examined and the right adjudicated without an assignment of errors.

The party seeking to revise the action of the District Court, upon any question involved in the determination of the cause, by an assignment of errors, distinctly specifying the grounds on which he relies, entitles himself to an investigation and decision of the question.

An assignment of error should be such as to direct the mind of the court to the particular error complained of; the assignment, that "there was error in the charge of the court," has been held too general and vague.

APPEAL from Ellis. The case was tried before Hon. NAT. M. BURFORD, one of the district judges.

On the 10th of June, 1852, the appellant brought this suit to the District Court of Navarro county, against David R. Mitchell and numerous other defendants, for the recovery of two leagues of land, cancellation of deeds, and damages.

The plaintiff derived his title to one of the leagues from Rachel Leach, made to her as a colonist of Burnet's colony, in October, 1835. The controversy was narrowed by compromises to this league.

The limits of the colony are set out in the record and syllabus of the case.

At the spring term, 1853, the venue, on motion of defendants, was changed to the county of Ellis.

The cause came to trial at the January term, 1859, and there were a verdict and judgment for the defendants. The plaintiff's motion for a new trial was overruled, and he appealed.

The record is voluminous, but the facts, so far as they are pertinent to the questions adjudicated in this court, are sufficiently indicated in the opinion. The main issue was, as to whether the land was within the limits of Burnet's colony, so as to give jurisdiction to the commissioner of that colony; or whether the land, being outside of the jurisdiction of that colony, is void, within the principle of Russel v. Mason, 1 Tex., 730; or whether the grant might not be so near the border, and be so founded in mistake of the granting officer and the colonist, as to bring the case within the principle of Hamilton v. Menifee, 11 Tex., 718. The boundaries of the colony and the mode of running the line of course became material questions.

*Wm. Croft,* for the appellant, cited 9 Tex., 344; 11 Tex., 718; 13 Tex., 553; 15 Tex., 375.

*D. M. Prendergast,* also for the appellant.

*J. W. Ferris,* for the appellee.

*C. M. Winkler,* also for the appellee, cited 1 Tex., 730; 20 Tex., 612.

DONLEY, J.—Exceptions were filed by appellees in the court below to the sufficiency of the petition, but it does not appear that the exceptions were noticed; the appellees have not appealed; no errors have been assigned by them. They have not in any way made themselves actors to bring before this court for revision the errors complained of in argument.

It has been repeatedly decided by this court, that when

exceptions are filed, but not subsequently noticed in the proceedings below, they will be deemed to have been waived by the party filing them. (Jones v. Black, 1 Tex., 529; Phillips v. Hill, 3 Tex., 397; Carter v. Carter, 5 Tex., 93.)

The grant to Rachel Leach, if situated within the limits of Burnet's colony, is sufficient to vest the title in her, if the land described in the grant can be identified. Objection is made to the title, that it is not within the limits of Burnet's colony. The colony calls to start from the town of Nacogdoches on the course north fifteen leagues distant, when, leaving free the twenty border leagues on one side on a parallel with the river Sabinas and the dividing line of the United States of the North; thence a line shall be run directly on the course west as far as the creek called Navasoto; thence downward on the left bank of the same, &c.

The surveyor who made the survey, relied on as evidence on the trial, began at the public square in the town at Nacogdoches, thence north 24°, west fifteen leagues, and from thence south 78° west to the west bank of the Navasoto. He says that the land in controversy lies fifteen or eighteen miles north of this line, and would, according to this survey, be that distance without the limits of the colony.

This testimony, if objection had been made, should have been excluded. To determine the boundary of the colony, a line should be run directly west from the termination of the first line of fifteen leagues in a northern direction from Nacogdoches, and the evidence to show the boundaries of the colony should have been confined to a direct west line from the point of intersection of the line from Nacogdoches with the line of the twenty leagues west from the east boundary of the State. It is conceived that only in one event can there be a departure from a direct course west in extending a line to ascertain the northern bound-

ary of the colony. If a line directly west would pass north of the Navasoto creek, the line must be so varied as to strike the most northern branch of that creek. The jury were instructed, that "if the Leach survey were made without the limits of Burnet's colony, then it would be void for the want of authority in the officer issuing the title." Nearly the same question is presented in the first charge asked by the plaintiff and refused. The giving of the charge above, and refusing the charge asked by plaintiff, was error. The boundaries of the colony had not, it is believed, been established by a survey. Persons who emigrated to and settled within the colony became, by virtue of that emigration and settlement, entitled to a grant of land, to be selected of any vacant land within the limits of the colony. If the lines of the colony had been marked, so as to be known, it is believed that a survey must have been within the limits of the colony; yet it might have been made with the line of the colony, as one of the lines of the survey.

If the lines of the colony have not been established by a survey, nor by certain and well-known boundaries, yet it was the right of the colonist to select the portion of land to which he was entitled in any place within the colony, and if it shall be ascertained, after many years, that in fact the land is a short distance without the limits of the colony, yet, if it can be ascertained or inferred from the facts in evidence that the grantee and the commissioner might reasonably conclude that the land was within the colony, the title shall not be divested. If the conclusion may fairly be drawn, that the commissioner and grantee might reasonably believe that the lands were within the limits of the colony, the grant must be sustained. The condition of the country at the time of the issuing of the grants under which the appellant here claims requires a liberal construction in favor of the grantee. In Hamilton v. Menifee, 11 Tex., 749, it is said, that "It would be an

act of great injustice to permit titles fairly and honestly granted, with reference to a line of boundary not traced by the government, but honestly determined upon by the authorities on the best lights which they had on the subject, to be impeached, because they are two or three miles within or without what may now be supposed to be the exact line."

A question is made in this case as to the fact, whether a survey of the league of land was made before the issuing of the grant, and whether the land is so described by the survey that it can be identified. It is believed that the marks on the ground, and the witnesses who assisted in making the survey, identify the land as the same surveyed for Rachel Leach. It appears, from a survey made during the pendency of the cause, that there are, in fact, some three hundred acres more than a league. This cannot affect the grant. It is believed to be well settled, that, where there has been an actual survey, and more land is included than was intended to be granted, but the excess is not so great as to induce the belief that a fraud has been attempted, the grantee must hold. We do not remember a case where such an excess as appears in this case has been held as an objection to the title. (Maxcy v. O'Connor, 23 Tex., 240; White v. Burnley, 20 How., 247.)

On the trial, the defendants offered to read in evidence the deposition of John A. Harlan. The plaintiff objected to reading the deposition, for the reason that the witness, Harlan, was then present in court. The objections were overruled, and the deposition was read in evidence. The deposition appears to have been material, and the objections should have been sustained.

By Art. 817, Hart. Dig., it is provided, that "no deposition of a witness, except when the witness is a female, shall be permitted to be read in evidence, unless the party offering the same, his agent, attorney, or some competent person, shall first make oath that the witness is without the

limits of the county where the suit is pending, or that such witness is dead; or that, by reason of age, sickness, or official duty, such witness is unable to attend the court." (Paschal's Dig., Art. 3733, Note 819.) The objection is made to reading the deposition in evidence, not for the reason that the oath prescribed by law is not made, but it is shown that the oath could not be made. We cannot know what reason induced the defendant to prefer reading the deposition, rather than placing the witness upon the stand. As the witness was present in court, it was the right of the plaintiff to have him placed on the witness stand, and there he should give his testimony before the jury in court.

Some questions have been discussed by counsel that are not adverted to in this opinion.

By Art. 2940, Hart. Dig., it is provided, that "the appellant, or plaintiff in error, shall, in all cases, file with the clerk of the court below an assignment of errors, distinctly specifying the grounds on which he relies, before he takes the transcript of the record from the clerk's office, and a copy of such assignment of errors shall be attached to and form part of the record, and all errors not so distinctly specified shall be considered by the Supreme Court as waived." It has been held by this court, that errors of a controlling character, that go to the foundation of the action or defense, may be examined and the right adjudicated without an assignment of errors. The party seeking to revise the action of the District Court, upon any question involved in the determination of the cause, by an assignment of errors, distinctly specifying the grounds on which he relies, entitles himself to an investigation and decision of the question.

The assignment, "that there was error in the charge of the court," has been held too general and vague. Johnson v. Alexander, 14 Tex., 386.) It is said in Earle v. Thomas, 14 Tex., 593, "what shall be sufficient special

assignment of error is not susceptible of precise definition. It should be such as to draw the mind to the apprehension of the particular error intended to be relied upon."

The judgment is reversed and the cause

REMANDED.