There being no error in the judgment, it is affirmed.

[Opinion delivered January 9, 1883.]                    AFFIRMED.

---

E. H. FORDTRAN v. V. & O. ELLIS.

(Case No. 518.)

1. SURVEY.— A call in a survey for the line of another survey, which is an open line on the prairie at the point of intersection, will not yield to a conflicting call for distance, when the location of the open line is certainly determined by natural objects, marked lines, and fixed corners of abutting surveys; as where the open line is but the prolongation of a line called for in an adjoining survey, and which line of such adjoining survey starts from a corner consisting of a permanent natural object, and is a marked line on the proper course before it becomes an open line on the prairie.

2. CHARGE OF COURT.— Refusal to give a charge abstractly correct, but not applicable to the evidence, will furnish no basis for a reversal.

3. DATE OF SURVEYS.— The field notes of two surveys as recorded in the surveyor's office, and certified to the general land office, were dated, one September 21, 1838, the other October 12, 1838, and yet the survey thus dated in September called to corner on a line of the survey dated in October. The certificate to each set of field notes as to the time of making the survey was, that it was made "since the first day of February preceding, and according to law." *Held*,

   (1) The refusal to give a charge predicated on the assumption that the field notes of date September 21, 1838, were the notes of a survey made on that date, was not error.

   (2) The dates tended, if at all, only in the remotest degree, to indicate that the surveys were then made, in view of the language of the surveyor's certificate, coupled with evidence that surveys older than either date called for the survey dated in September.

APPEAL from Lavaca. Tried below before the Hon. Wm. H. Burkhart.

Appellees brought this action of trespass to try title against appellants, April 21, 1875, claiming the land described in the petition by virtue of patents issued to them, one for one hundred and eighty acres as assignees of W. C. R. Schmidt, dated December 5, 1873,

the other for three hundred and twenty acres as assignees of Jacob Kaderli, dated September 3, 1873.

Appellants claimed the land in controversy by virtue of a patent issued to Wade Horton, assignee of John A. Fox, for one league and labor of land, dated April 23, A. D. 1841. The real issue was as to whether or not the land sued for was embraced in the Horton patent, under which appellees claimed.

Trial November 3, 1875; verdict and judgment for appellees for the land, etc., from which this appeal was taken. The errors assigned, and relied on for a reversal of the judgment, were the alleged error in the charge of the court, the refusal to give instructions asked, and that verdict was not supported by the evidence.

The one hundred and eighty and the three hundred and twenty acre tracts claimed by appellees would be embraced in the lines of the older survey for Wade Horton, if the south line of the Horton survey running west should be extended for the distance called for (four thousand four hundred varas), and its call to stop at the east line of the Lewis should be disregarded, which line is an open line in the prairie where the south line of the Horton intersects it.

The appellants' claim was by virtue of the Horton league of land. The lines of that survey are to the cardinal points of the compass — north, south, east and west. It is situated in a prairie locality. Its calls are to begin on the southwest corner of a survey made for Paulding; thence with the lines of surveys for Paulding and Green, east three thousand five hundred varas to the southeast corner of the Green survey; thence south with the west boundary line of Wood's survey four thousand eight hundred and forty-two varas to its southwest corner, six thousand four hundred varas, to a stake in a mound in the prairie; thence west four thousand four hundred varas to a stake on the east boundary line of a league of land surveyed for Mrs. Mary Lewis; thence north, with the east boundary line of said league, one thousand eight hundred and eighty-nine varas, its northeast corner; same course, two thousand eight hundred and fifty-one, in all four thousand eight hundred and forty varas, to a stake in a mound on the south boundary line of a league granted to Richards; thence east nine hundred varas to Richards' southeast corner; thence northwest to the east line of said league one thousand five hundred and sixty varas, to the place of beginning.

The field notes, as recorded in the surveyor's office, and certified to the land office, are dated — the Horton, September 21, 1838; the Lewis, October 12, 1838; the former made by the principal surveyor, the latter by Thomas Green, his deputy, but certified by the principal.

The certificate to each, as to the time it was made, is that it was made "*since the 1st of February preceding,* and according to law."

There was no other evidence to suggest that the Horton was the earlier survey.

Appellant contended that as the east line of the Sarah Lewis survey was an unmarked line, running through the prairie, therefore the Horton survey was entitled to run its entire call for distance, over seven hundred varas further, in order to find its third corner, and should not be stopped at the line of the Lewis survey. The Lewis survey begins at a stake on the east line of the Chase survey; thence east two thousand five hundred varas, with the line of a league granted to Taylor, to a stake in the prairie; thence north with Taylor's survey two thousand varas to a stake, with two live oaks as bearing trees; thence east with Taylor's survey three thousand and sixty-one varas, and intersects the west line of a league granted to Daniels, a stake in the prairie; thence north three thousand five hundred and eighty-six varas to a stake in the prairie — this last being the line in controversy.

The evidence was that the Taylor and Daniels surveys begin at or near the forks of the Lavaca river, a natural object; they run by plainly marked and traceable lines, through the timber of the Lavaca river before they strike the prairie, nearly to the point where the Mary Lewis survey corners on their line. The marked line of the Taylor is traceable back to the river below.

The corner of the second call of the Lewis survey, on the line of the Taylor survey, was identified by the stumps of the live oaks being found at correct bearing distance. The east line — the line in controversy of the Lewis survey — is the prolongation of the line, a direct north course, of the Taylor and the Daniels surveys.

The Brooks survey, on the north line of the Lewis, has a plainly marked line, according to the evidence.

The county map of Lavaca county shows the west line of the Lewis to be the prolongation of the Taylor and Daniels, and that the surveys of the appellants lie outside of the Horton league, which is laid down as running with the Lewis east line.

It was also proved by the county surveyor that his surveys for the plaintiffs, Ellis, were made under direction from the commissioner of the land office, as vacant land, and patents were issued on them; and that, in his opinion, no actual survey, on the ground, of the Horton survey was ever made, but that it was plotted by the surveyor, to run with the abutting surveys.

The testimony of the witnesses Russell and Huddleston showed that the Daniels survey and Taylor surveys were the oldest in the county; that one line of each was the Lavaca river; that the river is correctly meandered; that the beginning corner of the Taylor survey is a natural object — the forks of the Lavaca river; that the beginning point of the Daniels is on North Lavaca, at a certain distance from the forks, which is correctly given with marked trees. That the corners of the Mary Lewis league call for certain corners of the Taylor survey, which are marked and known. That the Mary Lewis survey is older than the Horton — knows this from the fact that it is called for by the Horton field notes, and by surveys which are older than the Horton. This was also corroborated by Doss, who said that he thought the older survey of the Mary Lewis was lost. The northeast corner of the Mary Lewis could be easily established by extending the dividing line of the Daniels and Taylor survey north, to its points of intersection, with a line run east from the corner of the Brooks survey, which was a known and marked corner, and this corner corresponds with the marked corners of the Mary Lewis.

The relative location of the surveys will be apparent from the plot; the dotted prolongation of the south line of the Horton indicating its southwest corner as claimed by appellants.

*Timmons & Brown*, for appellant.

I. The court erred in refusing the request of defendants to charge the jury that, "If you believe, from the evidence, that the survey and grant to Wade Horton, as assignee of John A. Fox, were made prior to plaintiffs' surveys and patents, and prior to the survey of one league of land for Mary Lewis, then you are instructed that the calls in the grant to Horton must first be satisfied, and that the calls of subsequent surveys to Mary Lewis and plaintiffs can have no influence over the Wade Horton survey."

This charge is correct as a matter of law, and differs from the bulk of the charge given, in that it had some application to the facts proven on trial. The testimony shows the Horton survey to have been made nearly a month before that for Mary Lewis, and that the grant preceded that to Mary Lewis by eight years, and the patents to plaintiffs over thirty years; and that all the lines in controversy are imaginary lines in the prairie, to be determined by course and distance. This being the state of facts, the call in the Wade Horton survey and grant for a line of the Mary Lewis league, as constituting a part of its west boundary, could have no influence in restricting and curtailing the Wade Horton grant.

II. The court erred in refusing to charge that, "4th. If the testimony shows a conflict between the surveys for the plaintiffs, Ellis, and the survey of one league for Mary Lewis with the grant to said Horton, and the Horton survey and grant are of the earliest date, then you are instructed that the plaintiffs' surveys and the Mary Lewis survey and grant must give way and yield to the Horton grant."

The only evidence upon that point did show the Horton survey and grant to be the oldest, and the testimony of Russell, the surveyor of Lavaca county, and of Doss, the surveyor of Fayette county, shows there is a conflict in the surveys. Russell testifies that the Mary Lewis and Horton surveys lap seven hundred or eight hundred varas, and as the plaintiffs' east line is a prolongation of the east line of the Mary Lewis survey, the plaintiffs' surveys lap on the Horton the same distance. Doss' testimony shows that the plaintiffs' surveys lap on the Horton grant seven hundred and sixty-five varas. The testimony of both plaintiffs and defendants having established beyond controversy the fact that the surveys and grants did lap, it was the duty of the court to have charged the jury what rule was to govern them where the testimony showed a conflict of surveys.

III. The testimony having shown the east lines of the Mary Lewis and plaintiffs' surveys and the west line of the Horton grant to be imaginary lines in the prairie, there is nothing outside of the calls in the Horton grant to restrict the surveyor in determining the position of the west boundary line.

IV. The court erred in refusing to give the seventh charge asked by the defendants, which is as follows: "If the survey for Wade Horton was made prior to the survey for Mary Lewis, and the line of the latter is unmarked, then you are instructed that the call in the Wade Horton survey for the Mary Lewis line is supposititious, and you will disregard this call in fixing the position of the west boundary line of the Horton grant."

V. "The fact that an elder survey calls for a corner of a younger survey will have no influence in fixing the position of such elder survey." May's Lessee v. Sanders, 6 J. J. Marsh., 350; Preston v. Prewit, 2 Marsh., 155.

*Miller & Sayers*, for appellees.

*Ballinger & Mott*, also for appellees.

WATTS, J. COM. APP.— There is a conflict in the conflict in the Horton survey, in that the call from the southeast corner is "west four thousand four hundred varas to a stake on the east boundary line of a league of land surveyed for Mrs. Mary Lewis." It appears from the evidence, upon applying these calls to the land, that, running from the southeast corner of the Horton west, that the east boundary line of the Lewis survey will be reached before the distance called for is exhausted. This discrepancy in distance appears to be about seven hundred and fifty varas.

As this is a conflict in the calls of the Horton survey, the rules of law announced in the charge of the court as applicable to that class of cases are neither immaterial nor misleading.

But it is claimed that as the east boundary line of the Mary Lewis survey is an open line in the prairie, that the call for it must therefore yield to the call for distance; and the southern line of the Horton survey should be extended the distance called for, to wit, four thousand four hundred varas.

The case of Booth v. Strippleman, 26 Tex., 436, is cited as supporting that proposition. In that case the line of the Ross survey called for was not only an open and undefined line, but that its true position was difficult, or rather almost incapable, of identification. Besides, to extend the line to the Ross survey as called for, would require a material departure from the course, would vary the grant from the configuration required by law, and include an excess of about three thousand acres of land; while in this case the true position of the Lewis line, as appears from the evidence, is capable of being readily ascertained. The Daniels and Taylor surveys, upon which that of the Lewis abuts, and to a great extent depends, are well defined upon the ground, by natural objects, marked lines and fixed corners. It appears from the terms of the grant that it was the intention to abut the Horton upon the Lewis survey, and in part make the east boundary line of the latter the west boundary line of the former. There are no such controlling circumstances in this case as would necessarily require the call for the east line of the Lewis survey to yield to that for distance.

As the question is presented by the record, it cannot be certainly said that there is a conflict between the Horton and Lewis surveys; on the contrary, it seems to us that the evidence reasonably shows that there is no such conflict. And it is upon the theory that such a conflict exists, that the objections are urged to that portion of the charge of the court.

Without entering upon a discussion of the several objections to the charge of the court, as urged by counsel, after a careful exam-

ination of the record we are unable to say that there is any error in the same. When considered with reference to the evidence adduced, the charge seems to be unobjectionable.

Appellants asked the court to charge the jury as follows: "4th. If the testimony shows a conflict between the surveys for the plaintiffs, Ellis, and the survey of one league for Mary Lewis with the grant to said Horton, and the Horton survey and grant are of the earliest date, then you are instructed that the plaintiffs' surveys and the Mary Lewis survey and grant must give way and yield to the Horton grant."

"7th. If the survey for Wade Horton was made prior to the survey for Mary Lewis, and the line of the latter is unmarked, then you are instructed that the call in the Wade Horton survey for the Mary Lewis line is supposititious, and you will disregard this call in fixing the position of the west boundary line of the Horton grant."

These charges were refused by the court, and that refusal is assigned as erroneous. They will be considered together as one assignment, as the same questions are presented by each.

It is well settled that the charge must be applicable to the case as made by the evidence; and no charge should be given upon an issue where there is no evidence to sustain it. Where the court refuses to give a charge upon an issue, in case the evidence would not sustain a finding thereon, such refusal is not error, and furnishes no ground for the reversal of the judgment. This proceeds upon the doctrine announced in Texas Land Co. v. Williams, 51 Tex., 51, in effect that the court will not revise the action of the district court in giving or refusing instructions, unless, where applied to the facts, there is manifest injury to the rights of the party complaining. Now if the evidence upon that issue was such that a verdict in favor of appellants thereon would not be sustained by the evidence, or would be against the evidence, then evidently the refusal to give the charges asked could work no injury to them. They claim that the evidence shows that the Horton is an older survey than that of the Lewis; if that is true, then the court should have given the charges asked. And further, if the evidence would sustain a finding affirming that fact, then the court should have given the instructions, and the refusal to do so is such error as would require a reversal of the judgment. The only evidence found in the record, tending in the remotest degree, if that can be so considered, is the date given at the head of the field notes — that of the Horton being "September 21, 1838;" that of the Lewis being "October 12, 1838." In neither does the officer certify as to the date when the survey was made, but in both it is certified that the survey was

made according to law, and since the 1st day of February, 1838. It is not made to appear what these dates, given at the head of the field notes, were intended to denote. It might have been to designate the date upon which the field notes were formerly made out, or the date upon which they were entered in the records of the surveyor.

Whatever might have been intended by these dates, from the manner in which they are given, if at all, they but tend in the remotest degree to show that these were the dates upon which the respective surveys were made, while an examination of the Horton field notes discloses cogent evidence showing that the Lewis was the older survey. Therein the lines of the Lewis survey are called for, and made in part the boundary of the Horton. In addition to this, the surveyor, Russell, testifies that the Lewis was an older survey than that of the Horton, and gives as a reason why this is true, that in certain adjoining surveys older than the Horton, the Lewis survey is called for and recognized as an existing survey.

Upon this state of case, we are of the opinion that the court did not err in refusing to give the instructions asked by appellants.

The verdict of the jury is fully sustained by the evidence, and as there is no such error apparent of record as requires a reversal of the judgment, we conclude, and so report, that it ought to be affirmed.

AFFIRMED.

[Opinion approved January 12, 1883.]