WHITE et al. v. BLUM.

(Circuit Court of Appeals, Fifth Circuit. February 23, 1897.)

1. TRIAL—INSTRUCTIONS—DIRECTING VERDICT.
    When the court, in the presence of the jury, has said to counsel that it had expected a request to direct a verdict for the plaintiff, but, if counsel preferred to have the case submitted to the jury under instructions prepared by them, the court would so submit it, but would set aside any other verdict than one for the plaintiff, such action is equivalent to a direction to return a verdict for the plaintiff, and will be so treated by an appellate court.

2. LAND GRANTS—VALIDITY—EXCESSIVE QUANTITY.
    In the absence of objection by the proper political authority, a grant of land should not be displaced by a junior grant, nor declared void, simply because, according to the lines of the survey, it contains more land than the state intended to grant.

3. SAME—SURVEYS.
    Upon an examination of the evidence as to the boundaries of the grant in question in this case, *held*, that the fact that the lines of the survey, as laid down in the field notes, included more land than the state was authorized to grant for the purpose intended, furnished no reason for reversing the · calls of the survey and altering one of the lines, so as to diminish the quan-

tity of land,· especially when such change· would result in unsettling the titles of many persons who have paid value for the land, and held it for many years.

In Error to the Circuit Court of the United States for the Northern District of Texas.

Suit was brought by the defendant in error (plaintiff in the court below) in the ordinary form of "trespass to try title," to recover four tracts of land situated in Clay county, Tex. W. M. Bowman, B. F. Strange, and others were made defendants in the original petition filed in the circuit court, and the warrantors of title of the defendants were subsequently brought in by the latter. Upon the issues joined between the plaintiff in the court below and the original defendants, and upon those raised between such defendants and the warrantors, the suit proceeded to its final determination. At the conclusion of the evidence the plaintiffs in error requested several special instructions, which were refused by the court, and, in lieu thereof, the court submitted to the jury a general charge prepared by the defendant in error. The bill of exceptions discloses that before reading the charge, and in the presence of the jury, the court, in reply to the argument of counsel for the plaintiffs in error, made the following statement, as copied from the record, but which seems somewhat confused: "The court further said that the undisputed facts show that in constructing the Cherokee county school land by its calls for course and distance alone, that it would contain four leagues of land, but to do so it would be necessary to cut the north line of said school land survey short 1,017 varas. The court told the jury that it was of the opinion that such should be the construction of the survey; but, if constructed according to defendants' contention, that it would contain an excess of about two thousand acres; that the quantity of land in the grant might be an important circumstance to be considered in arriving at the intention of the surveyor who surveyed the land and the intention of the state; that the court regarded the area of the survey in this case of great importance in determining the boundaries of the survey, inasmuch as the constitution of the state of Texas only granted to each county four leagues of land, no more, no less; that Judge McCormick so expressed himself in his opinion on a former appeal; that at the time the charge given by the court to the jury was submitted to him by counsel for the plaintiff, and they asked the court to submit the case to the jury on said charges, to which the court replied that he thought they would ask the court to instruct the jury to find for the plaintiff, but, if they preferred it, he would submit the case to the jury under said charge, but, if the jury found any other verdict than for the plaintiff, he would set it aside. The statement was made in the presence and hearing of the jury, and before said charge was read, as well as the other remarks of the court hereinbefore set out. That, while these are my views, it is for the jury to determine the fact, and render their verdict accordingly. After the argument of counsel, the court expressly and emphatically told the jury (in oral charge as well as in written charge) that they were the sole judges of the weight of the evidence and the credibility of the witnesses, and that they must arrive at their own conclusions as to the facts." A verdict was returned in favor of the defendant in error, and judgment duly rendered thereon. To reverse this judgment, B. F. Strange, an original defendant, C. C. White, Joseph A. Kemp, and A. Newby, warrantors, prosecute error.

S. H. Hodges, for plaintiffs in error.
Henry Sayles, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and MAXEY, District Judge.

MAXEY, District Judge (after stating the facts as above). We regard the language used by the trial court in the presence of the jury as equivalent to an affirmative direction to return a verdict in favor of the defendant in error, and we shall treat it accordingly. It is not

necessary, for the disposition of this case, to notice all the errors assigned by the plaintiffs in error, nor to critically examine the charges given and refused. While, generally speaking, and abstractly considered, the charge of the court and the special instructions requested by the plaintiffs in error declare correct legal principles, they are nevertheless misleading in some material respects when applied to the facts of the case. The true location of the east boundary line of the Cherokee county school survey is the real question involved in the controversy. And it is evident to us that the court below, in reference to the location of this line, attached undue importance to the mere excess in area of the survey, as located according to the contention of the plaintiffs in error. Under the laws of the state of Texas, Cherokee county was entitled to a grant of four leagues of land, and the excess complained of amounts approximately to 2,000 acres. It is a well-recognized principle that, where the proper political authority is not objecting, and no question of fraud is involved, an elder survey should not be displaced by a junior grant, nor declared void, simply because it contains more land than the state intended to grant. This view of the law is not in conflict with anything said by this court upon the former hearing of the case (Blum v. Bowman, 30 U. S. App. 50, 14 C. C. A. 158, and 66 Fed. 883), and is in perfect harmony with the doctrine announced by the supreme court and the highest courts of Texas. The principle is thus stated by Mr. Justice Catron, speaking for the court, in White v. Burnley, 20 How. 247:

"The next question appears on the face of the grant. All the steps leading to the grant, with one exception, are regular. The quantity of land that the lines of survey include is equal to two leagues, whereas only one league is called for; and the reason the surveyor gives in his certificate of survey for the excess is that he included in the survey a bay of the ocean, which was not subject to grant,—a quantity equal to a league. This statement was proved to be untrue, almost entirely. The grant contains two leagues and more of fast land, and for this reason it was insisted at the trial that it was fraudulent and void. But the court charged the jury to the contrary, with several qualifications. These we deem to have been useless, as our opinion is that a regular grant (that is, a completed title, made by those exercising the proper political power to grant land) is not open to this objection by an opposing claimant setting up a younger title; and we understand that on this principle the well-considered cases of Hancock v. McKinney, 7 Tex. 384, and of Swift v. Herrera, 9 Tex. 263, proceed. Such is the settled doctrine elsewhere. Overton's Lessee v. Campbell, 5 Hayw. (Tenn.) 165. How far the government of Texas might interfere by 'due course of law' (that is, by a suit in its name and behalf) is a question for that government to decide. Owens v. Rains' Lessee, Id. 106, is to the effect that it can only be done by suit. To hold that this grant was void because the surveyor returned an excess in his survey, without any evidence that the grantee participated in the matter, as is the case here, would be an alarming doctrine through a widespread portion of the United States."

Approving White v. Burnley, the supreme court of Texas says:

"These observations apply in their full force to the present case upon the supposition that it was shown that the grant was, in fact, excessive. It was, at most, voidable; not void. The appellant had no interest to be affected by it at the time; nor does he appear to have acquired a right to appropriate any part of the public domain until many years subsequent. If the government is content, he can have no right to complain. If his claim had existed at the time, there was ample scope for its satisfaction out of land not previously appropriated or granted. The grant not being void, the land embraced within it

was not vacant, or subject to location by the plaintiff. This view of the case will necessarily lead to an affirmance of the judgment." Maxey v. O'Connor, 23 Tex. 241.

See, also, Elliot v. Mitchell, 28 Tex. 111, 112.

The location of the east line of the Cherokee county survey depends upon the length of its north line, extended east from the northeast corner of Scott survey No. 13. These two surveys, together with the four surveys claimed by the defendant in error, to wit, the two Sweeney, the Rains county, and the Cassillas, are delineated upon the following sketch:

In this sketch, a, b, c, represents the north line; c, d, the east line; and d, e, f, the south line,—of the Cherokee county survey, as contended by the plaintiffs in error. The line a, b, represents the north line; b, e, the east line; and e, f, the south line,—of said survey, as claimed by the defendant in error. The survey, as constructed by the plaintiffs in error, includes the four tracts in controversy; but, if constructed according to the contention of the defendant in error, these four tracts are excluded, in which event the verdict and judgment are correct, and should be sustained.

In 1853 the Scott surveys No. 7, 8, 9, 10, 11, and 13 were located, by work on the ground, by the surveyor, William Hudson. In 1855 the same surveyor put in by projection, east of the Scott surveys, the Cherokee county four-league grant. The east lines of the six Scott surveys constitute the west boundary line of the Cherokee county survey, the field notes of the latter calling first for the southeast corner of Scott survey No. 7 as its beginning point, thence running north and east until the northeast corner of Scott survey No. 13 is reached. The original field notes of the Cherokee county survey, prepared by William Hudson in 1855, being found

incorrect in some particulars, were corrected in 1877 by the surveyor Sam Green, and upon the corrected field notes the patent was issued by the state. We do not regard the matter of the correction of the field notes as of much materiality in this controversy, as all parties to the suit concede, as we have already shown, that the east lines of the Scott surveys form the west boundary line of the Cherokee county survey. Upon the first trial of the cause in the circuit court the principal point of difference between the parties seems to have been as to the location on the ground of the northwest corner of Scott survey No. 13; the present plaintiffs in error insisting that a certain marked bearing tree designated such corner, and the defendant in error contending that it was about 1,017 varas further west. This difficulty was removed upon the second trial, and it is now conceded by the defendant in error that the northwest corner of Scott survey No. 13 is located at the point as originally claimed by the plaintiffs in error. It is also admitted by the parties that the southwest corner of Scott survey No. 8 is well identified and marked on the ground. These two corners being thoroughly established and well recognized,—i. e. the northwest corner of Scott survey No. 13 and the southwest corner of Scott survey No. 8,—the northeast corner of No. 13 and the southeast corner of No. 7 may be ascertained with mathematical precision. The northeast corner of No. 13 is 1,900 varas east from its northwest corner, and the southeast corner of No. 7 is 1,400 varas south from the southwest corner of No. 8. The evidence in the record shows that the surveyor Green knew where the corners of Scott survey No. 13 were located on the ground when he made the corrected field notes of the Cherokee county survey, in 1877; and the evidence further tends to show that the exact location on the ground of the southeast corner of the Cherokee county survey was also known to him at that time. Upon this point C. B. Patterson, whose testimony was uncontradicted, testified in behalf of the plaintiffs in error as follows:

"The lines of the Cherokee county school land and Scott surveys were located by Sam Green, county surveyor of Clay county, about 1879, and, so far as I know, the same have been recognized as the true lines and corners of said surveys until this controversy arose. The southeast corner of the Cherokee county school land, so far as I remember, was not pointed out to me by any one; but Sam Green * * * directed me how to find it, and from his description of it I did find it. Sam Green is now dead. * * * He told me that there was a stone at said corner, and I found it to be marked as he described it. Its location corresponded with the Cherokee county school land as claimed by these defendants."

Recurring to the field notes of the Cherokee county survey, which, as above shown, call for the southeast corner of Scott survey No. 7 as its initial point, thence north and east, with the Scott surveys, to the northeast corner of Scott survey No. 13, the calls continue as follows: "Thence east 6,625 varas, a stake, for the N. E. corner of this survey; thence south 9,886 varas, a stake, S. E. corner of this survey; thence west 13,557 varas, to the beginning." The objection of the defendant in error to the south line is that it is too long by 1,017 varas. But the last call of the field notes

runs west from the southeast corner not only 13,557 varas, but to the beginning. The beginning point is the southeast corner of Scott survey No. 7, which is easily and unmistakably ascertainable, and it should therefore be given the dignity of an "artificial object," and held superior to the call for distance. The rule is stated by Mr. Justice Henry in Maddox v. Fenner, 79 Tex. 291, 15 S. W. 239:

"When unmarked lines of adjacent surveys are called for, and when from the other calls of such adjacent surveys the position of such unmarked lines can be ascertained with accuracy, and when, in the absence of all evidence as to how the survey was actually made, there arises a controversy as to whether course and distance or the unmarked line of another survey shall prevail, we see no good reason why the survey line should not be given the dignity of an 'artificial object,' and prevail over course and distance."

See, also, Fordtran v. Ellis, 58 Tex. 245; Worsham v. Chisum (Tex. Civ. App.) 28 S. W. 905; Worsham v. Morgan (Tex. Civ. App.) 28 S. W. 918.

Protracting the south line along its course west to the southeast corner of Scott survey No. 7, the survey closes, without conflicting or interfering in any manner with contiguous locations. The only possible objection to such a construction of the grant goes to the question of excessive area,—a plausible objection, but one completely overthrown by adjudged cases. But the defendant in error, although claiming under a junior grant, insists that the calls should be reversed, and the lines run as follows: Beginning at the southeast corner of Scott survey No. 7; thence east 13,557 varas, a stake, for the southeast corner of this survey; thence north 9,886 varas, a stake for the northeast corner; thence west 5,608 varas to the northeast corner of Scott survey No. 13. In thus constructing the survey, the north line would be 5,608 varas in length, instead of 6,625, as called for in the field notes, and the survey would contain about 597 acres less than the quantity of land which the state intended to grant. Not only so, but innocent third parties, who purchased the Cherokee county survey, inclosed it, and took actual possession, several years prior to the locations of the defendant in error, believing themselves to be within the boundaries of the survey, would be deprived of their property, which they had bought in good faith, and for which they had paid a valuable consideration. The reversal of the calls is not warranted when productive of such a result.

The defendant in error is not entitled to recover the lands in controversy, and the trial court should have directed a verdict against him. For the reasons assigned, the judgment of the circuit court should be reversed, and the cause remanded, with directions to grant a new trial, and it is so ordered.