## HEADSTREAM v. GAILEY et al.
### No. 5702.

Court of Civil Appeals of Texas. Amarillo.

Feb. 11, 1946.

Rehearing Denied March 11, 1946.

R. L. Graves, of Brownfield, for appellant.

W. W. Price, of Brownfield, and Jack M. Randal, of Lubbock, for appellees.

STOKES, Justice.

This suit was filed by the appellant, Dene R. Headstream, against the appellees, J. R. Gailey, S. J. Adams and his wife, and Frederick Langenbeck, in the nature of a statutory action in trespass to try title. W. B. Hendricks made himself a party defendant by filing an answer in which he adopted the pleadings of his codefendants and alleged that he had, by deed of general warranty, conveyed to the appellees, Gailey and Adams, a portion of the land involved. Appellant sought to recover from the appellees 36.29 acres of land which he alleged were a portion of Surveys 5, 6, and 7, Block O, in Terry County, owned by him. Appellees defended under the general issue and also the three, five, ten, and twenty-five year statutes of limitations. The question of limitations was eliminated from the case, however, and it will not be further noticed. The contention of appellees is that the 36.29-acre strip of land is not a portion of Surveys 5, 6, and 7 but is a portion of the lands owned by them lying immediately south of and adjoining those surveys. These conflicting contentions require location of the line running east and west between the tracts of land involved. Surveys 5, 6, and 7 in Block O are located north of the line, and Survey No. 1 in Block E, owned by appellee Langenbeck, and Survey No. 2 in Block CO, owned by appellees, Gailey and Adams, are located immediately south of, and adjoining, the lands owned by the appellant. The location of the true line between the lands of the respective parties involves primarily the location of the northwest corner of Survey No. 1 in Block E, because all of the surveys are tied to that corner. The case was submitted to a jury upon two special issues, in answer to which the jury found that that corner was located 75 varas north of the point claimed by appellant and, in accordance with the verdict, judgment was entered decreeing the strip of land in controversy to the appellees. Appellant presented and urged a motion for judgment non obstante veredicto, which was overruled, and he has perfected an appeal to this Court.

Although the suit as filed was one in trespass to try title, it developed into a boundary suit and involves only the location of the line between the lands owned by the appellant and those owned by the appellees. The strip of land in controversy is 75.2 varas wide at the west end, 68.2 varas wide at the east end, and 2837.5 varas in length.

Survey No. 1, Block E, belonging to appellee Langenbeck, was originally surveyed on July 10, 1879 by E. L. Gage, deputy surveyor of Young District, and patent issued November 28, 1879 upon Gage's survey. The field notes show that Gage began at a point in Lynn County designated as the northeast corner of Survey 319, Block 3, commonly known as the Double Lakes Corner, from which he went 12 miles west, thence 12 miles north where he established the northwest corner of Survey 1, Block E. His field notes then called for a distance of 1400 varas east where he established the northeast corner of Survey No. 1 and,

there being no physical marks on the ground at the time of the trial, these two corners were not capable of definite location by anything other than an actual survey. In 1916 Mark E. Ragsdale, a State surveyor, was employed by some of the landowners in the community to locate the corners of their lands. Ragsdale undertook to locate the entire north line of Survey No. 1, including its northeast corner. He began at a point not shown by the record but, in doing the work, he established a concrete marker some four miles west of the northwest corner of Survey No. 1, Block E, and followed a course east from that point to what he designated as the northwest corner of Survey No. 1, where he drove into the ground a 1¼-inch galvanized iron pipe, 30 inches in length, which still remains. He proceeded thence east and marked the northeast corner of Survey No. 1 by digging a circular trench, in the center of which he set a post. The northwest corner of Survey No. 1 as located by Ragsdale is 75.2 varas south of the line upon which a fence stood for many years, evidence of which, in the form of a sand ridge, still remains. On August 3, 1923 a patent was issued by the State, in which Survey 2, Block CO, was granted to W. B. Hendricks, whose title appellees, Gailey and Adams, now hold, and the field notes in the patent began at a large circular trench erected by Mark E. Ragsdale for the northwest corner of Survey 2, Block CO, and the northeast corner of Survey No. 1, Block E, thence east, south, west, and north to the place of beginning.

It is the contention of the appellant that the true north line of Survey No. 1, Block E, is governed by the galvanized iron pipe driven and designated as its northwest corner by Ragsdale in 1916, and that the circular trench at its northeast corner, made by Ragsdale, was located directly east of the stake a distance of 1400 varas. If appellant is correct in this contention, then that portion of the strip of land involved in this suit which is contiguous to Survey No. 1, Block E, belongs to him. We cannot agree with appellant, however, in his contention that the galvanized iron pipe driven by Ragsdale located or established the northwest corner of Survey No. 1. The proper location of that corner and survey is governed by the survey made by Gage in 1879 if his footsteps can be traced. The record does not show that Ragsdale attempted to follow the footsteps of Gage. According to the testimony, he proceeded from a point four miles west of the northwest corner of Survey No. 1. Whether his beginning point was an established corner, the record does not show. Sylvian Sanders, the surveyor who surveyed the strip of land in controversy for the appellant, testified on cross-examination that in October 1944 he traced the footsteps of E. L. Gage by starting at Gage's starting point in Lynn County, designated by the witnesses as the Double Lakes Corner, and being the northeast corner of Survey No. 319, Block 3, in that county, thence 12 miles west and 12 miles north where Gage established the northwest corner of Survey No. 1. He said that, in doing this, he found and passed the galvanized iron pipe driven by Ragsdale for the northwest corner of the survey, the distance carrying him approximately 100 varas north of that point. This distance was finally determined to be 75.2 varas instead of 100 or more. If a course is followed thence east 1400 varas to the northeast corner of Survey No. 1, it would be 73 varas north of where appellant contends the circular trench was placed by Ragsdale and all of the strip of land claimed by appellant adjacent to Survey No. 1 would be the north portion of that survey instead of the south portion of Surveys 5 and 6 in Block O.

█ At the time of the trial the circular trench had been obliterated by erosion, and the only testimony we find in the record as to its location is from the witness, W. B. Hendricks, who was on the ground before the trench was obliterated, and he testified that the trench was on the line of the old fence and that there was a post in the center of it. The old fence was located about 73 varas north of the point which the appellant claims was the northeast corner of Survey No. 1 as located by Ragsdale. However that may be, it is clear that in so far as Survey No. 1 is concerned, the Gage survey made in 1879 must be recognized as the survey which established the lines of that tract, and from it the conclusion is inescapable that that portion of the strip of land in controversy which is adjacent to Survey No. 1, Block E, is a part of, and belongs to, that survey and not to Surveys 5 and 6 in Block O, as contended by the appellant. The Gage survey made in 1879 contained in its own calls the elements of complete description by which the survey could easily be located and identified. It was made many years before the Ragsdale survey of 1916 and

was, therefore, the senior survey. The Ragsdale survey could not, therefore, be made to control the senior survey made by Gage. Hord v. Rivas, Tex.Sup., 6 S.W. 183; Miller v. Meyer, Tex.Civ.App., 190 S.W. 247; Ruth v. Carter-Kelly Lumber Co., Tex.Civ.App., 286 S.W. 322.

The rest of the strip sued for by appellant lies along the north line of Survey 2, Block CO. Survey 2 adjoins Surveys 6 and 7, Block O, lying north of it, and Survey No. 1, Block E, lying west of it. Appellant's claim for that portion of the controverted strip is based upon the patent issued by the State to W. B. Hendricks on August 3, 1923. The field notes included in the patent began at "a large circular trench erected by Mark E. Ragsdale, State surveyor, for NW cor. of this sur and NE cor. of No. 1, Block E." They extend thence south, east, north, and west to the place of beginning. If the circular trench was located on a line directly east of the galvanized pipe driven by Ragsdale for the northwest corner of Survey No. 1, Block E, and it had been the only object mentioned in the patent as the beginning point, appellant's contention would have some basis, but such is not the case. As we have said, at the time of the trial, and for a long time prior thereto, the trench had been obliterated by erosion. The witness Hendricks was the only witness who knew anything about its location and he placed it about 73 varas north of the point contended for by the appellant. The patent, however, also designated as the beginning point the northeast corner of Survey No. 1, Block E. As we have already shown, that corner, according to the controlling Gage survey of 1879, was approximately 73 varas north of the point contended for by appellant. If the true northeast corner of Survey No. 1, Block E, is taken as the beginning point for the field notes of Survey No. 2, Block CO, as, in our opinion, it must be, then all of the strip that is located on the line between Survey 2, Block CO, and Surveys 6 and 7, Block O, constitutes a portion of Survey No. 2, Block CO, owned by the appellees, Gailey and Adams, and not a portion of Surveys 6 and 7, Block O, owned by appellant.

As is indicated by what we have said, in our opinion the entire strip of land in controversy is a portion of Survey No. 1, Block E, and Survey No. 2, Block CO. These surveys belong to the appellees, Langenbeck, Gailey, and Adams, and the verdict and judgment decreeing it to them were not only supported by the testimony but were the only proper verdict and judgment that could have been rendered.

Appellant contends that the court erred in refusing to submit to the jury certain special issues requested by him and in submitting the two special issues which were submitted to the jury. These contentions cannot be sustained, for the reason that, as stated in his brief, the record presents only one material issue and that is the proper location of the northwest corner and the north line of Survey No. 1, Block E, as all the other lands involved are tied to that survey. The fact that Ragsdale drove the galvanized iron pipe in the west line of Survey No. 1 at a point which he thought constituted its northwest corner could not affect the senior survey made by Gage in 1879; and the testimony of Sanders, who retraced the footsteps of Gage and thereby located that corner at the place where appellees contend it is located, being undisputed, establishes conclusively that the true corner is at least 75.2 varas north of the galvanized iron pipe.

Appellant presents the argument that on August 12, 1916 the landowners in the community agreed to employ Ragsdale to locate the corners of the various tracts owned by them and agreed to abide by his survey, and that the corners located by him have at all times since been recognized as the proper corners of the various tracts of land in the community, especially those involved in this suit. The agreement copied in the statement of facts shows that it was signed by John W. Gordon and George W. Carter, and then states there were twelve other names not listed. There is no showing that either Gordon or Carter ever owned Survey No. 1 in Block E, or Survey No. 2 in Block CO, and it is not shown that either the present owners of those tracts or any of their predecessors in title signed or acquiesced in the agreement. They are therefore not bound by it, and we are not directed to any testimony to the effect that any substantial number of landowners in the community recognized the galvanized iron pipe as being the established corner of Survey No. 1. Even if they had done so, there is nothing shown in the record before us which would bind the appellees or obligate them to abide by any line different from the proper one as it was abundantly established by the Gage

survey, the re-survey made by Sanders, the old fence and the remaining evidence of its location, and the circular trench as located by the witness Hendricks.

As indicated by what we have said, in our opinion no error was committed by the court below, and its judgment will be affirmed.