## COX v. PIWONKA.

### No. 12568.

Court of Civil Appeals of Texas. Galveston.

April 30, 1953.

Al L. Crystal, of Houston, L. W. Gray, of Caldwell, for appellant.

Hays Bowers, W. J. Alexander, Caldwell, for appellee.

MONTEITH, Chief Justice.

This action was brought in statutory form of trespass to try title by appellee, R. R. Piwonka, for the recovery from Robert Cox of the title to and possession of two tracts of land of respectively 67.5 acres and 53⅙ acres out of the S. C. Robertson League No. 4 in Burleson County, Texas, and for damages.

Appellant answered by a plea of not guilty and by general denial.

While this action was brought in the form of a trespass to try title suit, it is in fact a boundary suit to determine the location of said two tracts of land involved in the suit.

In a trial before the court without a jury judgment was rendered in favor of appellee, with appellee recovering the two tracts of land involved in the suit.

The trial court found, in his findings of fact, that some time before December 1, 1945, appellant had agreed to sell to appellee the two tracts of land involved in this suit of respectively 53⅙ acres and 67.5 acres of land and that by deed dated December 1, 1945, appellant Robert Cox, in consideration of $3,000 which was paid to appellant by appellee, R. R. Piwonka, conveyed said two tracts of land and that the two tracts of land involved in this suit are a part of said 225 acres conveyed by Joshua Perry to J. M. Oldham. At the request of appellant, the trial court prepared and caused to be filed his findings of fact and conclusions of law.

This action involves the location on the ground of the northwest and southwest corners of the 53⅙-acre tract and the northwest line of the 67.5-acre tract.

For the purpose of illustrating the contentions of the parties, and for the purpose of showing the location of the lands in controversy and the surrounding surveys on which its location is based, we have inserted a map as a part of this opinion.

The court found that Joshua Perry had conveyed to J. M. Oldham a tract of land described as being 225 acres in the northeast corner of the S. C. Robertson League No. 4.

On December 17, 1903, this 225-acre tract of land was conveyed to Paschal Walson.

On February 12, 1898, Paschal Walson conveyed 53⅛ acres of the land in controversy—a part of said 225-acre tract—off the west end of the above tract to D. O. Cox.

By deed dated September 23, 1944, said 53⅛ acres, more or less, and said tract of 67.5 acres were conveyed to appellant, Robert Cox. Both of these tracts are in dispute.

By deed dated December 1, 1945, appellant, Robert Cox, conveyed to appellee the two tracts of land above referred to as 53⅛ acres, more or less, and 67.5 acres, more or less.

In January, 1946, Louis Beasley, a surveyor, made a survey of said two tracts of land and discovered that the two tracts contained 116.24 acres of land.

In February, 1946, Mr. Beasley made another survey and found that the said two tracts contained 114.19 acres.

The trial court found that prior to December 1, 1945, appellant, as seller, and appellee, as purchaser, agreed on the purchase and sale of 120 acres of land out of the S. C. Robertson League No. 4 in Burleson County, Texas, for the price of $25 per acre and that pursuant to that agreement, by deed dated December 1, 1945, appellant conveyed to appellee said two tracts of land—53⅛ acres and 67.5 acres—claimed to be 120.6667 acres of land, fully described in the deed. Appellee paid appellant $3,000 for said two tracts of land by check reciting full payment for the two tracts.

Appellant introduced no evidence on the trial of the case except a map drawn by his counsel and plaintiff's witness, Tolan Watson, while the witness was on cross-examination.

Appellant relies on 21 points of assigned error. He contends that the court erred in refusing to permit him to file a trial amendment; in refusing to grant his motion for judgment against appellee; and in finding that there was an agreement between appellee and appellant either for the purchase and sale of 120 acres of land out of the S. C. Robertson League No. 4 at an agreed price of $25 per acre. He contends that the trial court erred in its second finding of fact that the two tracts of land were surveyed on the ground for the reason that there was no evidence to support such finding; that the court erred in its fifth finding that the southeast line of the S. C. Robertson League No. 3 shows an overrun of 106.9 varas. He contends that this line is actually 5,106.9 varas long and that there is no evidence to support such finding. He contends that the court erred in its sixth finding that the northwest line of the S. C. Robertson League No. 4 shows an overrun of 152 varas and that this line is actually 5,152 varas long because there is no evidence to support such finding; that the court erred in its 7th, 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, 17th, 18th and 19th findings because there was no evidence to support said findings.

The record shows that appellant moved for leave to file a trial amendment, setting forth affirmative defenses which had been omitted in his pleadings.

Rule 66 of Texas Rules of Civil Procedure provides that the matter of permitting the filing of amendments to pleadings is addressed to the sound discretion of the court and this order will not be disturbed unless abuse of discretion clearly appears. Senegar v. La Vaughan, Tex.Civ. App., 230 S.W.2d 311, refused, n. r. e., and Burroughs v. Bunch, Tex.Civ.App., 210 S.W.2d 211, error refused.

Appellee relies upon three points, in which he contends that the trial court committed no error in refusing to permit appellee to file his trial amendment setting up the defenses of estoppel by reason of laches and stale demand; that the evidence in the record is sufficient to support the findings of the trial court numbered I, II, V to XIX, inclusive, and the judgment for appellee; that it was proper for the trial court to refuse appellant's motion for judgment and to render judgment for appellee.

■ This suit was brought in trespass to try title for the purpose of establishing the boundaries of the land described in the deed from appellant to appellee. This is not an equitable proceeding but is statutory. It has been for a number of years a well-established rule in this State that the defense of laches and stale demands will not lie in an action of trespass to try title. In the case of Duren v. Houston & T. C. Ry. Co., 86 Tex. 287, 24 S.W. 258, the court held, in response to an application for leave to file trial amendment that the plea of stale demand cannot avail defendants in this suit. The case of Cagle v. Sabine Valley Timber & Lumber Co., 109 Tex. 178, 202 S.W. 942, 6 A.L.R. 1426 is to the same effect.

Mr. Beasley, the surveyor, testified that the only landmark he found on the southwest line of the two tracts involved in the suit was a hackberry tree on the west line of the 67.5-acre tract, 191 varas north 30 west from the southwest corner of the 67.5-acre tract and that the line dividing the Mrs. Perry tract and the Piwonka-Watson tract was an old fence line and hedge row. In his testimony he marked and referred to the corners of the tracts of land in controversy: the 67.5 acres, the northwest corner marked B, the southwest corner marked C, the southeast corner marked D and the northeast corner he marked E. He marked the southeast corner of the 53⅙-acre tract J, the northeast corner K, the northwest corner G and the southwest corner H. He testified that in establishing the northwest corner of the 53⅙-acre tract he commenced at the Black Jack tree marked F in the west line of the S. C. Robertson League No. 4 and ran the line to the northwest line of said league, running the line both ways. That he ran the northwest line of said league to the southwest corner of the S. C. Robertson League No. 3, a distance of 1,645 varas. He then ran south 30 west 30 varas to where he found a rock, and that he then ran on the same course 900 varas to where he came to the northwest corner of the 53⅙-acre tract.

The record shows that the deed from appellant conveyed to appellee two tracts of land of 53⅙ acres and 67.5 acres, and that appellant sold and appellee bought and paid for 120 acres of land. From this fact it will be seen that this cause of action is not simply to recover 120 acres of land but to establish the boundaries of the land actually conveyed in the deed from appellant to appellee.

The case of Liedeker v. Grossman, 146 Tex. 308, 206 S.W.2d 232, was a suit to enforce a contract of purchase and sale of land in which the trial court rendered a take nothing judgment against the plaintiff. The trial court made and filed its findings of fact and conclusions of law. They were attacked for lack of sufficient evidence of probative force. The San Antonio Court of Civil Appeals upheld this contention and reversed and remanded the case with instructions. 202 S.W.2d 267.

Upon application for writ of error the Supreme Court held that the Court of Civil Appeals could not substitute its findings for the findings of the trial court if there was any evidence in the record to sustain the trial court's findings; and that the judgment of the trial court could not be set aside unless it could be said that as a matter of law there was no evidence of probative value to support such judgment.

The case of Reeves v. Roberts, 62 Tex. 550, was a boundary suit in which the testimony of the witnesses as to the lines and corners was in conflict. In his opinion Judge Stayton said, "All these matters were doubtless well considered by the court below, and we cannot say that his finding is not sustained by the evidence. The credibility of witnesses was no doubt by him duly considered in the light of all the facts before him, and his finding upon the facts cannot be disturbed."

■ The findings of fact in the instant case, being supported by the evidence in the record, cannot be disturbed under the rules above stated.

The record reveals nothing with reference to the southeast line of the 67.5 acres except as stated in the field notes of the deed. Mr. Beasley, the surveyor, testified that there were no landmarks on the west

or southwest lines of the 53⅙ and 67.5 acres except a hackberry tree 191 varas from the southwest corner of the 67.5 acres.

After establishing the northwest corner of the 53⅙ acres, the surveyor then established the southwest corner of the 67.5 acres by running a line from the southwest corner of the E. J. Stokes land down the League line to a road, then ran north 60 east 2,145 varas to a point south 30 east for the southwest corner. The surveyor corrected his distance to be 2,546 varas.

The record reveals no natural monuments on the ground, with the possible exception of the Black Jack tree marked F and the Hackberry tree marked 3 hacks fore and aft.

The 53⅙-acre tract and the 67.5-acre tract are bounded on the east or northeast by the Watson to Piwonka tract and the Mrs. Emma Perry tract, and the fence dividing them has been there since 1909. They are bounded on the east or southeast by the 297-acre tract sold by Mrs. Edna Wood Benson to D. O. Cox and the 243-acre tract sold by Geo. T. Wood to D. O. Cox.

The surveyor testified that there were no landmarks on this side of the two tracts except the hackberry tree 191 varas north 30 west from the southeast corner of the 67.5 acres and that consequently he went to the nearest established landmark, the Black Jack tree marked F in the west line of the league. That the first call ran 1,645 varas to the offset, rather than 1,600 varas, can make no material difference, because he surveyed to and found the offset marked on one end by a rock.

In the case of Carter v. Texas Company, 126 Tex. 388, 87 S.W.2d 1079, 1080, the court said, "As a rule, where an artificial object such as a marked line is called for as a monument, the monument when found and identified will be taken as a better guide in following the footsteps of the surveyor than his call for distance."

In the case of Petty v. Paggi Brothers Oil Company, Tex.Com.App., 254 S.W. 565, 568, the court held that, "Where the field notes of a survey are complete in themselves, and one corner can be located by course and distance from another established corner, it ought to be so established, and it is not permissible to look to the field notes of another survey to create an inconsistency in the calls."

The case of Humble Oil & Refining Co. v. Owings, Tex.Civ.App., 128 S.W.2d 67, 71, was a boundary line dispute which was submitted to a jury on special issues. The Court of Civil Appeals approved a charge submitted to the jury for their guidance in the following language:

"2. You are instructed that in locating the lines of the McKinney & Williams survey wherever there is a conflict in a call between its course, distance or natural or artificial object, you will give controlling effect to natural objects, artificial objects, course and distance in the order named.

"3. You are further instructed that a line of a located survey is an artificial object and controls a call for distance."

These propositions, we think, not only support the action of the surveyor in surveying the northwest line of the 53⅙ acres to the established northeast corner of Piwonka's Watson tract, but they are also his authority for starting at the southeast corner of Mrs. Emma Perry's tract, also established in the old fence line since 1909, and running south 61–45 west 605 varas to the beginning, for the south line of the 67.5 acres, rather than the 560 varas mentioned in the deed. The southeast corner had been established by the surveyor previous to running this last line.

In the case of Carmichall v. Stanolind Oil & Gas Co., Tex.Civ.App., 256 S.W.2d 129, 132, the court held that, "The rule of law has been well established that where an old survey is being retraced, excesses over course and distance calls between original monuments on the ground must be prorated among the various sections within a given block or system of surveys."

The case of Maxey v. O'Connor, 23 Tex. 234, was a case in which plaintiff claimed the land in controversy by a certificate located in 1855 and again in 1856. Defendant in possession claimed under a grant to Power and Hewitson. In discussing the questions involved, the court said, "But

such subsequent grant, if excessive and invalid, could not affect the validity of the present title. Edwards v. James, 7 Tex. 372. If, by reason of the former grant, the present is excessive, and subject to be reformed, it would not render the grant void, but only voidable at most, for the excess. And if it be conceded, that the appellant has the right to have it reformed in this action, to the extent of such excess, it does not appear that he would be benefited thereby. But the appellant has not the right, at his instance, to have the grant reformed for the excess, if it be excessive. That is a right which appertains to the government, and not to a subsequent locator. White v. Burnley, 20 How. [235], 247 [15 L.Ed. 886]." Continuing, the court said, "The grant not being void, the land embraced within it was not vacant, or subject to location by the plaintiff. This view of the case will necessarily lead to an affirmance of the judgment."

Under these authorities the proration rule has no application here.

Under this record we think that Mr. Beasley followed the established rules of law in marking the boundaries of the two tracts of land in controversy and that the trial court was justified under the law in refusing to render judgment for appellant and in rendering judgment for appellee.

We have carefully considered all points of error presented by appellant in his brief and finding no reversible error, the judgment of the trial court will be affirmed.