Homer HILL and Doretta Hill, Appellants,

v.

Clyde E. WHITESIDE and Clarice Benton Whiteside, Appellees.

No. 2–85–272–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 12, 1988.

Stark & Associates and Richard S. Stark, Gainesville, for appellants.

Sanders, Masters, Watson & Brown and John M. Key, Wichita Falls, for appellees.

Before BURDOCK, HOPKINS and FARRIS, JJ.

## OPINION

PER CURIAM.

From a judgment for plaintiffs-appellees, Clyde E. Whiteside and Clarice Whiteside (Whitesides), in their trespass to try title suit against appellants, Homer Hill and Doretta Hill (Hills), this appeal is brought. Appellants raise eight points of error, based upon misplacing the burden of proof, legal and factual insufficiency of evidence, erroneous partial striking of pleadings and erroneously excluded evidence.

We affirm.

In setting out the relevant facts in the case, we will borrow liberally from the fact statement contained in the Hills' brief.

Appellants own certain lands located in Montague County, Texas, in the A.J. Miller Survey, Abstract No. 491, which was patented in 1882, as well as in the Kaufman County School Land Survey which was patented in 1847. Appellees own certain lands located in Montague County, Texas, described as the W.S. Vines Survey, Abstract No. 1653, which was patented in 1944. The Vines Survey field notes and patent call for the northern boundary of the Vines Survey to adjoin the southern boundary in the Kaufman County School Land Survey, and the western boundary of the Vines Survey to adjoin the eastern boundary of the A.J. Miller Survey. The location of these two boundaries forms the basis of the dispute. Ownership of the lands in question is not an issue, except as to the boundaries of each party's land. A plat showing the relative locations of each of the surveys which have some bearing on the location of the disputed boundaries is shown in the Appendix. Appellants' land is shown thereon by diagonal lines and the Whitesides' land appears as the W.S. Vines Survey.

In August of 1984, the Whitesides began the construction of a fence along what they believed to be the northern boundary of their land, beginning such work at the eastern end of the line. The Hills believed the fence was being constructed well within the southern boundary of the land they owned in the Kaufman County School Land Survey, which adjoined the Whitesides' land on the North. Accordingly, the Hills removed the wire fencing from the several posts upon which it had been strung. Shortly thereafter, the Whitesides filed suit in the form of trespass to try title and also sought injunctive relief, damages and attorney's fees. In a bench trial, judgment was rendered in favor of the Whitesides, locating the boundaries in dispute and decreeing that the Whitesides were entitled to possession according to such boundaries.

The first point of error claims that the court erred in misplacing the burden of proving the location of the parties' East–West and North–South boundaries on the Hills. This claim evolves from the following interrogatory posed by the Whitesides:

By metes and bounds, describe only that portion of lands claimed to be owned by Defendants which Defendants allege overlap the boundary of the W.S. Vines Survey, Montague County, Texas, as such boundary is alleged by Plaintiffs and described in Exhibit 'A', attached hereto, and incorporated herein for all purposes.

The interrogatory was originally answered in the following manner:

In Montague County, Texas: (1) the South boundaryline [sic] of Block No. 28, Kaufman County School Land, Abst. No. 407 as the same is contiguous and forming the North boundary line of the W.S. Vines Survey; and (2) the East boundary line of the A.J. Miller Survey, Abst. No. 491 as the same is contiguous and forming the West boundary line of said W.S. Vines Survey.

Appellants were required to amend after appellees objected to the answer as non-responsive and moved for sanctions. They did so by setting out a metes and bounds description of the area which they claimed out of the tract claimed by appellees which had been described by metes and bounds in Exhibit A, attached to the interrogatory.

Appellants argue that the effect of their plea of not guilty to the trespass to try title and boundary dispute action was to put appellees to the proof of all their allegations, that appellants had no burden of showing where the boundary line truly lay, and that the court improperly shifted the burden of proving where the boundary line lay from appellees to them.

Appellees counter this contention by pointing out that the interrogatories, being addressed to the discovery of a claim or defense, were proper under TEX.R.CIV.P. 166b(2)(a), and that simply being required to answer an interrogatory has nothing to do with shifting the burden of proof. We agree, because there is no point of error directed to the impropriety of the interrogatory and because appellants do not point to any place in this record in substantiation of either appellees' or the trial court's posture regarding the burden of proof having been shifted in any degree from its original place upon the shoulders of the plaintiffs-appellees. Furthermore, no authority has been cited in support of appellants' argument. Point of error number one is overruled.

We next consider factual and legal sufficiency of evidence points as to the trial court's determination of the West boundary and the North boundary of the lands awarded to the Whitesides. In their brief the Hills state the trial court's findings of fact, conclusions of law, and judgment "are almost completely based on testimony of Hardy Seay, a surveyor", and further, "[a]ppellees' boundary line and the Court's judgment will stand or fall on Seay's testimony".

The record shows Hardy L. Seay, Jr. is a registered public surveyor with offices in Bowie. He had been surveying in the area since 1971, with seventy to eighty percent of his practice being in Montague County. Seay had made a survey of the Whitesides' land in 1974. At that time, he located and marked the boundaries of the W.S. Vines Survey.

The original W.S. Vines Survey and field notes were made in 1923 by W.A. Morris and a patent to the lands described therein was issued in 1944. Said survey contains the following description:

[B]eginning at the the [sic] most Northern North West corner of a Pre-emption Survey made for W.H. Adams, a stone ... Thence South 950 varas to the inner corner of the said W.H. Adams Survey —a Stone ... Thence West 506 varas to the most Southern North West corner of the said W.H. Adams Survey and in the East boundary line of the A.J. Miller Survey ... a Stone ... Thence North with the East line of said Miller Survey 986 varas to South boundary line of the Kaufman County School Land—a Stone ... Thence East with the South line of the Kaufman County School Land 1145 varas to the West line of a Pre-emptions Survey made for John O'Leary, a pile of Stone—Thence South 36 varas to the North East corner of the aforesaid W.H. Adams Survey, a pile of Stone ... Thence West 639 varas to the place of beginning. Bearings marked X.

When Seay conducted the 1974 survey, he began at the most northern North–West corner of the W.H. Adams Survey where he found the stone marked "X". That stone also marks the location of the inner corner of the W.S. Vines Survey, and is the only natural monument to be found in the entire W.S. Vines Survey. From the beginning point, Seay ran the bearings and distances called for by the field notes of the original W.S. Vines Survey and patent. Reproduced here is a portion of Plaintiff's Exhibit 14, showing the results of Seay's 1974 survey.

KAUFMAN COUNTY SCHOOL
LAND SURVEY
Surveyed Sept. 2, 1856

It is noted that 175 feet East of the East line of the Miller Survey (also the West line of the W.S. Vines Survey) there is shown a broken line bearing the legend, "E. line Miller per Adams Survey". Seay testified that he used that broken line to indicate the position of the West line of the W.H. Adams Survey called for by an 1886 survey of the Adams tract by J.A. Kelly. In that survey, the call from point 195 to the East line of the Miller Survey is only 1230.5 feet, which is 175 feet shorter than the same line call of 1405.5 feet in the 1923 W.S. Vines Survey. In a similar manner, Seay noted a variance in the location of the South line of the Kaufman County School Land Survey which constitutes the northern boundary of the W.S. Vines Survey.

In 1974 there was no dispute regarding either the western or northern boundaries of the W.S. Vines Survey. When the present dispute began the Whitesides

called upon Seay to recheck his previous work to either confirm or disprove the 1974 survey.

Seay decided that since the West line of the Vines calls for an adjoinder with and to run along the East line of the Miller Survey and since the Miller Survey is senior to both the Adams and Vines, it was necessary to first attempt to locate the East line of the Miller rather than to use the Adams as a primary reference. He was joined in this effort by Joy Green, the surveyor hired by the Hills. Neither surveyor could locate any original monuments to the Miller Survey. They then went to the next best evidence, i.e., evidence of occupation on the ground. There was none to be found which showed the Miller East boundary. Using evidence of occupation, they were able to locate the West line of the Miller Survey by an occupied fence line and a segment of an old road.

The field notes in the Miller Survey make calls for due North, South, East and West. However, the actual bearing of the occupied line along the fence and road on the West side of the Miller was one degree, eleven minutes off true North as found in 1985 by the surveyors' solar observation. Evidence was presented that recognized standards of accuracy in compass bearings, such as were taken in the original Miller Survey, are from one-half degree to a degree and one-half. On the other hand, accuracy of sun lines, which are established by observation of the sun and the application of formula to the observation, can be established within ten seconds.

The Northwest corner of Miller was established by an intersection of occupied lines. Turning a right angle there, the surveyors established the North line of the Miller Survey which conformed to the fence lines in the area which ran roughly along the same North 1 degree 11 minutes East variation found on the West line. They then went along the North line 7922.2 feet (2852 varas), the distance called for in the Miller Survey, to establish the Northeast corner of the Miller. Again, they turned a right angle South, as called in the patent, for a line which would run parallel with the West line of the Miller and other fences in the area. Projecting the East line of the Miller 7,922.2 feet from the West line of the Miller, the East line of the Miller was 9.09 feet West of the Southwest corner of the Vines, as established by Seay in 1974 and only 1.8 feet East of where Seay had placed the Northwest corner of the Vines in 1974. To further confirm the location of the East line as projected from the West line of the Miller, both surveyors took into account the East–West deed calls of Hills' Tracts 2, 3 and 4, whose northern boundaries, plus the call for distance from the Miller western line to the beginning point of Tract 2, account for the exact called distance between the western and eastern Miller boundaries. It is noteworthy that in Hills' Tract 3 and Tract 4, the deeds describe a single point on the East boundary line of the A.J. Miller as: (1) the beginning point for Tract 3; (2) also the most southern Southwest corner of the Kaufman County School Land; and (3) Northwest corner of the W.S. Vines Survey.

Seay explained that the slight deviation in the Vines North boundary at the point marked 190 to the point 191 was made to give recognition to the occupied line of an old fence which appeared to be a long time honored property line. In 1971, Seay had previously surveyed the Haralson property to the North and had at that time placed an iron pipe at points 191 and 192, where he had found a pile of stones which he considered a monument marking the southern boundary of the Kaufman County School Land and the southern boundary of the Haralson land. He felt it best not to disturb those clearly occupied lines in spite of the fact that they deviated slightly from a straight line extension of the North line of Miller.

The only other testimony of a qualified surveyor in the record is portions of a deposition given by Joy Green, who had been hired by the Hills in September 1984 to survey their lands. Green had spent eighty hours in the field and about two-hundred forty hours on office work. He testified that his work was complete except for the preparation of a final plat. He had a copy of Seay's 1974 survey and he, too,

felt it was vital to locate the southern boundary of the Kaufman County School Land and the eastern boundary of the A.J. Miller.

Green was unable to find any of the original monuments in the Miller Survey. However, he found it was possible to locate the western boundary by evidence of occupation by old roads and fences. He also agreed the western boundary line so established deviated from true North by one degree, eleven minutes. He further agreed the method of turning a right angle off of that line established the northern line of Miller, and stated the line ran parallel with old fences. Green further testified he did not find any error in Seay's 1974 work. He reached the conclusion that the East line of the Miller Survey, as indicated by old fence lines, is roughly parallel to the line shown by Seay between points 83 and 77 with a maximum variance of less than ten feet. Finally, the record indicates he could not gather enough evidence from his field work on the ground to indicate that the southern boundary of the Kaufman County School Land would vary from the North line of the W.S. Vines Survey as shown by Seay.

Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's verdict upon special issues. *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them, *First Nat. Bank in Dallas v. Kinabrew*, 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.), by the same standards as are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a special issue. *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985); *International Armament Corp. v. King*, 686 S.W.2d 595, 597 (Tex. 1985); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate*, 244 S.W.2d at 661–62.

A "no evidence" point of error must and may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Ins. Co. v. Thomas*, 678 S.W.2d 278, 288 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361 (1960).

Under TEX.R.APP.P. 80(b) and 81(b), when we sustain a "no evidence" point, it is our duty to render judgment for the appellant because that is the judgment the trial court should have rendered. *See Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176 (Tex.1986) (per curiam); *National Life and Accident Insurance Co. v. Blagg*, 438 S.W. 2d 905, 909 (Tex.1969).

An assertion that the evidence is "insufficient" to support a finding of fact can mean that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). We are required to consider all of the evidence in the case in making this determination. *See id.*

### West Boundary

Appellants' attack upon the trial court's finding as to the West boundary of the Whitesides' property is based upon the following premises:

1. The Adams survey was susceptible of location by its own field notes.

2. The Vines Survey, being junior to Adams depends upon Adams to locate the Vines boundaries as a matter of law and a junior survey cannot be made to control the senior survey.

It is contended that if Seay had used the common beginning point, the stone marked "X", and located the Vines' West line by surveying out the Adams, the Whitesides would have wound up losing a strip 175 feet wide.

■ Appellants correctly cite *Headstream v. Gailey*, 192 S.W.2d 795 (Tex.Civ. App.—Amarillo 1946, writ ref'd n.r.e.) for the proposition that when the senior survey can be easily identified, a junior survey cannot be made to control the senior survey. In that case, however, it was found the senior survey made in 1879 contained in its own calls the elements of complete description by which the survey could easily be located and identified on the ground. In the case before us we do not perceive the Adams survey to be so easily located and identified. Although the beginning call of Vines is from the stone marked "X" at point 194, South to the innermost corner of Adams, and would appear to adjoin the Adams along that line, and the next call is West to the corner of Adams, again adjoining the Adams along that line, the location of that corner could not be located and identified on the ground. Since the location of that corner is further described as being in the East line of the Miller in both the Adams and the Vines field notes, and the respective calls from point 195 to that common corner are at variance by 175 feet, it is thus obvious that the location of that corner was uncertain, and could only be ascertained by locating the East line of the Miller, which is senior to both the Adams and Vines. This is precisely what the surveyors found to be necessary and what they did.

Appellants assert the one call for distance from point 195 to point 77 in the Adams Survey, a junior survey to the Miller, should control the location of the East boundary of the Miller and also the West boundary of the Vines. In discussing the weakness of a mere call for distance, the court in *Warren v. Swanzy*, 361 S.W.2d 479 (Tex.Civ.App.—Beaumont 1962, writ ref'd n.r.e.), stated:

> The fact that the distance, 525 yards, falls CONSIDERABLY short of this corner is NOT significant. The call in a deed for distance is the WEAKEST of all calls. *Stafford v. King*, 30 Tex. 257 . . . .

*Id.* at 484 (emphasis added).

■ The call in both the Vines and Adams patents for adjoinder of their West lines with the East line of Miller, a senior survey, prevails over any other calls for bearing, distance, or acreage. Concerning the priority to be given a call for an adjoinder with a senior survey line, the court in *Strong v. Delhi-Taylor Oil Corporation*, 405 S.W.2d 351 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.), stated:

> [A]lso hold that the intention of the surveyor controls and that where it is shown the surveyor intended to join one survey with another, nothing short of the location of natural objects called for in the field notes can break the adjoinder call.

*Id.* at 376.

■ We hold that, under the facts before us, it was necessary in establishing the disputed Vines boundary to first establish the boundary of the senior survey with which the disputed boundary called for an adjoinder, and that the method used to accomplish such location was proper.

As we view the evidence before us in the light of the criteria recognized as necessary to sustain a no evidence point or an insufficient evidence point, we find there is more than a scintilla of evidence to support the trial court's judgment as to the West boundary, we are not barred from giving weight to the evidence by any rule of law or evidence, and such evidence does not conclusively establish the opposite of a vital fact. Point of error two is overruled. Regarding the insufficiency of the evidence claim, we similarly hold that, considering all of the evidence, the evidence supporting the trial court's judgment is not so weak or the evidence to the contrary so overwhelming that the judgment should be set aside. Point of error three is overruled.

## North Boundary

When Seay surveyed the North lines of the Vines in 1974, he continued at point 83 from where he had just established the West line of the Vines. There, Seay again turned a right angle as called in the patent and went eastward 1,405.5 feet to point 190, which was 100 feet directly North of the stone at point 194. The called distances in the Vines patent called for the North line of the Vines to run 100 feet (36 varas) North of the stone at point 194.

At point 190, Seay first encountered fencing along the North line. There were no fences West of point 190 to point 83. Continuing along the fence first encountered at point 190, Seay went East to a stake and fence corner at point 191, then continued East along the fence to point 192, where he encountered a scattered pile of stone, a monument, at point 192. He then went southerly to another monument, the pile of stone found at point 193.

In going the called distance on the main body of the Vines, including points 83 to 190, Seay appears to have walked in the original footsteps of the original surveyor, Morris. At point 190 and continuing eastward, Seay recognized an occupied line there so as not to "create problems".

In 1984, Green tried to locate the Southeast corner of the Kaufman County School Land to tie back to the Southwest corner (and the Northwest corner of the Vines), but could not get data accurate enough to do so. After completing all his field and office work, Green could find nothing on the ground to locate the South boundary of the Kaufman County School Land. When asked directly where he found the South line of the Kaufman County School Land lay, Green stated:

> I cannot gather enough evidence from that on the ground that it varies from this line right here, varies from the north line of the Vines Survey. I cannot gather enough evidence from my field work on the ground that indicates that the south boundary line of the Kaufman County School Land would vary from the

North line of the W.S. Vines Survey, as indicated on Exhibit 'BB'.[1]

■ When the senior survey cannot be located, another rule of law then comes into play. If because of a lapse of time since the making of the senior survey, the original senior boundaries have disappeared, recitals in a junior survey are the best evidence of the location of the boundaries of the senior survey. *See Waldrop v. Manning*, 507 S.W.2d 626, 630 (Tex.Civ. App.—Texarkana 1973, writ ref'd n.r.e.); *Barnes v. Wingate*, 342 S.W.2d 352, 357 (Tex.Civ.App.—Beaumont 1960, writ dism'd); *see generally Strong*, 405 S.W.2d at 351.

■ Since the South line of the Kaufman County School Land could not be located by either surveyor, the best evidence of its location is the 1923 Vines survey by W.A. Morris, wherein Mr. Morris found the South line of the Kaufman County School Land.

■ Seay was correct in locating the beginning point, the stone marked "X", and projecting his lines by course and distance from that beginning point to establish the North line of the Vines. If a grant can be identified in no other way than by the beginning corner, a survey may be constructed from it by the calls for course and distance. *See Phillips v. Ayres*, 45 Tex. 601, 611 (1876); *DeLeon v. White*, 9 Tex. 598, 607 (1853).

The location of the Vines North boundary established in 1974 was confirmed by Seay's work in 1984. After he had found the West line of the Miller, he was able to locate a point on that line which was common to two surveys lying to the West of Miller, those being the A. Ready Survey No. 11, Abstract A–643, and the A.J. Miller Survey No. 12, Abstract A–490. The common point was the Southeast corner of Abstract A–643 and the Northeast corner of Abstract A–490. The point so found was located at the intersection of occupied lines. This point is significant because the Kaufman County School Land field notes called for its South line to run to the South-

1. Exhibit "BB" is the same as Plaintiffs Exhibit 14.

east corner of the Ready No. 11 and the Northeast corner of the Miller No. 12. Projecting a line from the point so established to the East, the line was found to tie directly into the North line of the Vines exactly as it had been located by Seay. Furthermore, the three tracts owned by the Hills in the A.J. Miller Survey have a common northern boundary line called for in the deeds to run to the East from a point "1250 vrs. E. of the N.E. corner of the A.J. Miller Survey No. 12". That is the same corner previously shown to also be the Southeast corner of the Ready No. 11, from which a line projected to the East tied into Seay's North line of the Vines. Finally, it is shown that the easternmost tract of the three Hill tracts in the Miller Survey calls for its beginning point at its Northeast corner being on the East line of the Miller and being also the most southern Southwest corner of the Kaufman County School Land Survey and the Northwest corner of the Vines. Seay observed the Hills' fence line along part of the northern boundary of their three tracts. An extension of that fence line was found to be just a few feet North of his North boundary of the Vines.

The evidence offered by the Hills was mainly directed towards showing that there exists an old fence line on the South side of the road which runs through the Vines panhandle, and that Seay should have recognized it as locating the panhandle's North line. They also produced videotaped evidence showing the stakes and fence posts placed by the Whitesides at the Northwestern corner of the Vines, as compared to other landmarks in the vicinity claimed to mark the location of the old Sandy Mound School House asserting that the "old house foundation" shown near point 83 was the schoolhouse foundation. If the old house foundation was in fact the schoolhouse foundation, both the North and East boundaries of Vines shown by Seay would be inaccurate, since both parties agreed that the Sandy Mound School tract lay wholly within the A.J. Miller Survey.

Seay had a copy of the deed conveying the Sandy Mound School tract. He testified he was not able to reconcile the location of the house foundation with any other data, and had nothing to substantiate or contradict that the old house foundation he encountered and noted on the Vines northern boundary was in fact the foundation of the schoolhouse. Therefore, he did not give any effect to it in locating either boundary. It is again noted that Green, in checking Seay's work, discovered no errors in it. By the same criteria previously stated, we uphold the court's judgment regarding the North boundary, and overrule points of error four and five.

In their sixth point of error, appellants claim the "trial court erred in ignoring established principles of law applicable to fixing boundaries which resulted in changing the fixed and established boundaries of senior surveys adjacent to the Vines Survey". They correctly state that the order of dignity and control of calls by which conflicts in survey calls should be recognized is: (1) natural objects; (2) artificial objects; (3) course; and (4) distance. *See Howland v. Hough*, 570 S.W.2d 876 (Tex. 1978). They also quote from *State v. Franks*, 113 S.W.2d 589 (Tex.Civ.App.— Austin 1937, writ ref'd), as follows:

> The rule is settled that a junior survey must be made to conform to and harmonize with the lines and calls for older surveys, because the boundaries of the older surveys cannot be extended or varied to satisfy the calls of a junior survey.

*Id.* at 596. The Hills also refer to *Arrott v. Smith*, 225 S.W.2d 639 (Tex.Civ.App.—Austin 1949, no writ), in support of the proposition that where a junior survey called for the South boundary line of the senior survey as its boundary line, it must stop there, although the use of course and distance calls under the junior survey would cause it to extend into the senior survey. They summarize their argument by saying "[o]nce Mr. Seay had located the eastern boundary of the Miller Survey by calls of the Adams Survey, he should have then taken that location as the western boundary of the Vines Survey, since it is junior to both the Adams and Miller Surveys, and it is undisputed that the western boundary of the Vines Survey is called to be the eastern

boundary of the Miller Survey". They then claim Seay located the lines, including the East Miller line, based upon the calls in the Vines Survey, thus making both senior surveys subservient to the junior Vines, in violation of the above stated principles of law.

Appellants' position could be upheld if Seay's 1974 survey had not been confirmed by the location on the ground of the most senior survey, the Miller. When that had been accomplished, the subsequent resurvey of Vines was accomplished in deference to the most senior survey in the area. Under *Cox v. Piwonka*, 257 S.W. 2d 955 (Tex.Civ.App.—Galveston 1953, writ dism'd), a case cited by the appellants, a line of a located survey is an artificial object and controls a line for distance. Referring to *Cox*, appellants in their brief state, "[i]n other words, a call for adjoinder to another survey controls course and distance, so that if the direction and length of the boundary line as stated in the survey conflicts with the evidence of natural or artificial monuments, *or with the line as established on the ground of a previous survey to which the survey in question is called to adjoin*, the line of the previous survey will control the line of the survey in question" (emphasis added). In discussing the above rule, appellants contend there is insufficient evidence that Seay established the East line of the Miller on the ground. We have previously held to the contrary, and hold that the West boundary of the Vines was in accordance with the above stated rules, including *Cox*. As to the North boundary of Vines, we likewise hold that it was located in accordance with established law. Since the South line of the Kaufman County School Land could not be located with any reasonable degree of certainty, the calls in the junior Vines Survey are the best evidence of the location of the senior survey. *See Strong*, 405 S.W.2d at 375. Point of error six is overruled.

In point of error number seven, appellants contend the trial court erred "in striking appellants' pleadings claiming certain easement rights". The record reflects that, although the Whitesides filed their trespass to try title suit on August 30, 1984, the Hills did not file an answer until the date set by the court for pre-trial hearing, May 13, 1985. The answer consisted of the usual plea of not guilty, followed by claims of an easement appurtenant and easement by prescription along a certain road.

In its pre-trial order, the court required that all pleadings be filed at least fourteen days before the pre-trial hearing and any exceptions thereto be filed at least seven days before the hearing. The following appears in capital letters at the beginning of the pre-trial order:

COUNSEL ARE EXPECTED TO SEE TO ABSOLUTE COMPLIANCE HEREWITH. FAILURE TO DO SO MAY RESULT IN DISMISSAL OF THE CASE, OR OTHER APPROPRIATE SANCTIONS.

Appellees claimed appellants' attempt to interject the easement issue into their defense surprised them. They point out that at an initial hearing, the appellants' counsel had answered affirmatively when the trial court asked if the only dispute before the court was "where the lines are". Under the circumstances of this case, we believe the appellees had a right to assume the boundary dispute raised by their pleadings was the only matter they needed to prepare for trial. *See Safety Casualty Co. v. Wright*, 160 S.W.2d 238, 244 (Tex.1942).

Appellants maintain TEX.R.CIV.P. 63 gives them the "right" to amend. However, that rule provides amendments may not be filed "after such time as may be ordered by the judge under Rule 166". *See Wagner & Brown v. E.W. Moran Drilling Co.*, 702 S.W.2d 760, 771 (Tex.App.—Fort Worth 1986, no writ).

A denial of leave to file an amended pleading is discretionary with the court and will not be overturned on appeal unless a clear abuse of discretion is shown. *Ver-*

*million v. Haynes*, 149 Tex. 359, 215 S.W. 2d 605, 609 (1948). The burden of clearly showing an abuse of discretion is on the complaining party. *Valdez v. Lyman–Roberts Hosp.*, 638 S.W.2d 111, 117 (Tex.App. —Corpus Christi 1982, writ ref'd n.r.e.).

In addressing an attempt to interject a new cause of action into a lawsuit which would be based on facts not theretofore in issue, the court in *Patino v. Texas Employers Insurance Association*, 491 S.W. 2d 754 (Tex.Civ.App.—Austin 1973, writ ref'd n.r.e.), stated:

> It is not an abuse of discretion to deny leave to file an amendment which would change the factual basis of the lawsuit and probably prejudice the opposite party in maintaining his defenses. *Westinghouse Electric Corp. v. Pierce*, 153 Tex. 527, 271 S.W.2d 422 (1954).

*Id.* at 756.

In *Hardin v. Hardin*, 597 S.W.2d 347 (Tex.1980), the Supreme Court stated:

> When amendments which introduce new substantive matters have been refused by the trial court under Rule 63, the burden of showing an abuse of discretion is on the complaining party, rather than on the opposite party to show surprise.

*Id.* at 349.

Concerning the showing of surprise, the *Hardin* court further stated:

> This showing may be based on the trial court's conclusion that the amendment on its face is calculated to surprise or that the amendment would reshape the cause of action, prejudicing the opposite party and unnecessarily delaying the trial.

*Id.*

We hold that no abuse of discretion has been shown. Point of error seven is overruled.

Appellants' final point of error is based upon the trial court's ruling excluding from evidence the testimony of a witness, Thomas Hadley. Appellees objected to Hadley testifying because his name was not included in the answer to appellees' interrogatory requesting the identity of persons having knowledge of facts relevant to the suit, nor in a timely supplement to such answers as required by TEX.R.CIV.P. 166b(5).

The case was tried on three separate days: May 31, June 5, and June 13, 1985. On June 6, 1985, appellants filed their supplement to previous answers to the interrogatories, which listed the names T.J. Hadley and Ford Nelson. Paragraph 5 of Rule 166b requires that a party supplement his responses to interrogatories within thirty days prior to the beginning of trial, unless the court finds good cause exists for permitting later supplementation. A party must seasonably supplement his response if he knows the response was incorrect or incomplete when made, or he knows that the response, though correct when made, is no longer true and complete and the circumstances are such that failure to amend the answer is in substance misleading. The failure to supplement responses is the subject of TEX.R.CIV.P. 215(5).

> A party who fails to supplement seasonably his response to request for discovery in accordance with paragraph 5 of Rule 166b shall not be entitled to present evidence which the party was under a duty to provide in a supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter when the information required by Rule 166b concerning the witness has not been disclosed, unless the trial court finds that good cause sufficient to require admission exists.

*Id.*

■ Since appellants had not supplemented their answers within the time prescribed by Rule 166b, Thomas Hadley's testimony would have only been allowed upon a showing by appellants and a finding by the trial court that good cause existed for permitting such testimony. *Yeldell v. Holiday Hills Retire. and Nursing Center, Inc.*, 701 S.W.2d 243, 246 (Tex.1985).

Appellants had the burden of showing good cause to the trial court. *Gatx Tank Erection v. Tesoro Petroleum Corp.*, 693 S.W.2d 617, 620 (Tex.Civ.App.—San Antonio 1985, writ ref'd n.r.e.). Appellees had no duty to plead surprise or ask for a continuance. *Yeldell*, 701 S.W.2d at 246–47.

Appellants showed no good cause, did not ask the trial court to make a finding as to good cause, and the trial court made no finding that good cause existed. The burden of showing good cause and requesting that the court make a finding as to good cause rested on appellants. *Id.*

Furthermore, we are not persuaded that if error were presented by this point, it would have amounted to such a denial of appellants' rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. TEX.R.CIV.P. 434, now TEX.R. APP.P. 81. Point of error number eight is overruled.

The judgment is affirmed.

## APPENDIX